# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| MID-CONTINENT CASUALTY COMPANY, § § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. H-09-0422 | |
| § | | |
| PETROLEUM SOLUTIONS, INC., § | | |
| Defendant. § | | |

## MEMORANDUM AND ORDER

This insurance coverage dispute is before the Court on a Motion to Transfer Venue [Doc. # 3] ("PSI's Motion") filed by Defendant Petroleum Solutions, Inc. ("PSI"), and a Motion to Transfer Venue [Doc. # 7] ("Bill Head's Motion") filed by Defendant Bill Head d/b/a Bill Head Enterprises ("Bill Head"). Both motions seek to transfer the case from the United States District Court for the Southern District of Texas, Houston Division ("Houston Division"), to the United States District Court for the Southern District of Texas, McAllen Division ("McAllen Division"), pursuant to 28 U.S.C. § 1404(a). Plaintiff Mid-Continent Casualty Company ("Mid-Continent") filed a combined Response [Doc. # 13], and PSI filed a Reply [Doc. # 16]. Having reviewed the parties' submissions, all pertinent matters of record, and applicable law, the Court concludes that Defendants' Motions [Docs. # 3, # 7] should be **denied** at this time.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Mid-Continent is an Oklahoma corporation with its principal place of business in Tulsa, Oklahoma. Defendant PSI is a Texas corporation with its principal place of business in McAllen, Hidalgo County, Texas. Defendant Bill Head is a resident and citizen of the State of Texas with his principal place of business in Pharr, Hidalgo County, Texas. Defendant Titeflex Corporation ("Titeflex") is a Connecticut corporation with its principal place of business in Springfield, Massachusetts.

Bill Head sued PSI in the 398th Judicial District Court of Hidalgo County, Texas, *Bill Head d/b/a Bill Head Enterprises v. Petroleum Solutions, Inc.*, Cause Number C-416-06-I (the "Underlying Suit"), seeking damages arising from a leak of diesel fuel in an underground storage tank system installed by PSI at Bill Head's truck stop located in Pharr, Hidalgo County, Texas. Bill Head obtained a judgment for substantial damages from a jury at trial. PSI claims indemnity under an insurance policy ("Policy") issued by Mid-Continent. Mid-Continent commenced this declaratory judgment action in the Houston Division seeking a declaration that PSI is not entitled to indemnity.[1]

---

[1] PSI filed an Original Complaint [Doc. # 1], and subsequently a First Amended Complaint [Doc. # 2].

PSI and Bill Head move pursuant to 28 U.S.C. § 1404(a) to transfer this case to the McAllen Division. Triflex has not responded to Defendants' Motions and the time to do so has now passed.[2]

## II.  LEGAL STANDARDS

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 308 n.1 (5th Cir. 2008) (en banc), *cert. denied*, 129 S. Ct. 1336 (2009) ("*Volkswagen II*"). The purpose of 28 U.S.C. § 1404(a) is to protect litigants, witnesses, and the public against unnecessary inconvenience and expense, and to avoid wasted time, energy, and money. *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 789 (S.D. Tex. 2005) (Atlas, J.) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

To determine whether transfer is appropriate under § 1404, the Court must first determine "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). If this statutory requirement is met, a

---

[2]  *See* S.D. LOC. R. 7.3 (responses to an opposed motion is due 20 days after the motion is filed); HON. NANCY F. ATLAS, COURT P. 6(A)(4), available at <http://www.txs.uscourts.gov/district/judges/nfa/nfa.pdf>.

moving party must then show good cause for a transfer of venue. *Volkswagen II*, 545 F.3d at 315. To show good cause, a moving party must "clearly demonstrate that a transfer is for the convenience of parties and witnesses, in the interest of justice." *Id.* If "the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* Courts, however, should not transfer a case "if the only practical effect is to shift inconvenience from the moving party to the non-moving party." *Spiegelberg*, 402 F. Supp. 2d at 789 (citing *Goodman Co., L.P. v. A & H Supply Co.*, 396 F. Supp. 2d 766, 776 (S.D. Tex. 2005) (Rosenthal, J.)).

The Court must consider both private and public factors in deciding whether the transfer would be clearly more convenient for the parties and witnesses and serve the interests of justice. *See Volkswagen II*, 545 F.3d at 315. While "a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, it is nonetheless taken into account as it places a significant burden on the movant to show good cause for the transfer." *Id.*

"The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems

that make trial of a case easy, expeditious, and inexpensive." *Id.* (citing *Volkswagen I*, 371 F.3d at 203) .

The relative convenience to the witnesses is often recognized as the most important factor under § 1404(a). *Spiegelberg*, 402 F. Supp. 2d at 790 (citing *LeBouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1060 (S.D. Tex. 1998) (Kent, J.)); *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993) (Kent, J.). When the distance traveled is beyond 100 miles, inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. *Volkswagen I*, 371 F.3d at 204–05. In considering the convenience of witnesses, however, the relative convenience to key witnesses and key non-party witnesses is accorded greater weight in the venue transfer analysis. *See Spiegelberg*, 402 F. Supp. 2d at 790–91 (non-party witnesses); *Gundle Lining Const. Corp. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1166 (S.D. Tex. 1994) (Crone, J.) (key non-party witnesses); *Continental Airlines, Inc. v. Am. Airlines, Inc.*, 805 F. Supp. 1392, 1396 (S.D. Tex. 1992) (Kent, J.) (key witnesses). For example, the convenience of one key witness may outweigh the convenience of numerous less important witnesses. *Continental Airlines*, 805 F. Supp. at 1396 (citing *Young v. Armstrong World Indus., Inc.*, 601 F.

Supp. 399, 401–02 (N.D. Tex. 1984)).[3]  Moreover, among party and non-party key-witnesses, a court should give greater weight to the availability and convenience of non-party, key witnesses. *Continental Airlines*, 805 F. Supp. at 1397 (holding that where the "key witnesses are . . . employees of the party seeking transfer, their convenience is entitled to less weight because that party will be able to compel their testimony at trial").  However, the convenience of expert witnesses is generally entitled to little weight on a motion to transfer venue. *Continental Airlines*, 805 F. Supp. at 1397.

"The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Volkswagen II*, 545 F.3d at 315 (citing *Volkswagen I*, 371 F.3d at 203).

---

[3]  The moving party must offer more than mere allegations that certain key witnesses are not available or are inconveniently located. *Continental Airlines*, 805 F. Supp. at 1396.  Instead, the movant must specifically identify the key witnesses and outline their testimony. *Id.*  The Court is more interested in what the key witnesses *will testify*, as opposed to what they *could* testify, or what they have knowledge of. *See* 15 Charles Allen Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3851, at 216 (3d ed. 2007) (noting that courts require the party seeking the transfer to specify clearly, and by affidavit, the key witnesses to be called, their location, and provide a general statement of what they will testify).

These public and private factors are not necessarily exhaustive or exclusive, and none can be said to be of dispositive weight. *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004) (citing *Syndicate 420 at Lloyd's London v. Early Am. Ins., Co.*, 796 F.2d 821, 827 (5th Cir. 1986)).

### III.  ANALYSIS

As an initial matter, this case could have originally been filed in the McAllen Division pursuant to 28 U.S.C. § 1332.  Because jurisdiction is appropriate in both the Houston and McAllen Divisions, the Court has statutory authority to consider transferring the case to the McAllen Division.  *See generally Volkswagen I*, 371 F.3d at 203.  The Court will first address the relevant private factors and then analyze the relevant public factors.  Finally, the Court will evaluate whether the moving parties have shown good cause for the transfer by demonstrating that the McAllen Division is clearly more convenient than the Houston Division.

#### A.    Private Factor Analysis

##### 1.    Relative Ease of Access to Sources of Proof

The first factor the Court must consider is the relative ease of access to sources of proof.  Each party suggests that the proximity to relevant sources of proof weighs in favor of its preferred venue.  Mid-Continent argues that its 4,000 page claim file, which is located in Houston, is a relevant source of proof that deserves some weight

in the ease of access calculation. PSI disputes the claim file's relevance.[4] In contrast, PSI and Bill Head argue that the record in the Underlying Suit is the relevant source of proof and that it weighs in favor of transfer because it is located in Hidalgo County.

The duty to indemnify is the *only* issue present in this case.[5] For purposes of transferring venue, the parties agree that the duty to indemnify is based on the facts that established liability in the Underlying Suit. *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997) (citing *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 25 (Tex. 1965)); *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 965, 701 (5th Cir. 1996). The court record for the Underlying Suit located in Hidalgo County.[6] Substantial evidence of what facts were established in the Underlying Suit are contained in that record. It is very possible, but as yet unknown, that those facts, when evaluated in light of the terms of the Policy, will be sufficient for this Court to determine Mid-Continent's duty to indemnify PSI. *See Heyden*, 387 S.W.2d at 25. Litigation of the coverage claim should not become a retrial of the Underlying Suit. *See Enserch Corp. v. Shand Morahan & Co.*, Inc.,

---

[4] PSI's Reply [Doc. # 16], at 11.

[5] *See* Mid-Continent's First Amended Complaint [Doc. # 2], at 4; PSI's Motion [Doc. # 3], at 2–3.

[6] It will remain intact throughout the course of all appeals of the verdict. *See generally* TEX. GOV'T CODE § 22.214(c)(2) (directing the 13th Court of Appeals to hear and transact in Hidalgo County cases originally tried in Hidalgo County).

952 F.2d 1485, 1495 (5th Cir. 1992) (holding that in an indemnity suit, the trial court should limit evidence in order to "prevent a full-blown retrial of the [underlying] lawsuit"); *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *13–*14 (N.D. Tex. Sept. 13, 2003) (noting that additional testimony should be limited to issues not conclusively decided in the underlying lawsuit). Nevertheless, PSI and Bill Head argue that the location of the record in the Underlying Suit favors transfer to the McAllen Division because it would be easier there to secure the state trial records and conduct discovery. *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1291 (5th Cir. 1994) (holding that witnesses' and documents' availability for trial necessarily implicates the ease of conducting merits-related discovery).

The Court finds that location of the original state court records in the Underlying Suit is a factor of little if any importance in this case. No matter where this coverage action is pending, the state court file will be copied to the extent necessary for this litigation.

### 2. Convenience of Witnesses

The venue determination factors regarding witnesses are the availability of compulsory process to secure the attendance of witnesses, the cost of attendance for willing witnesses, and all other practical problems that make trial of a case easy, expeditious, and inexpensive. *See Volkswagen II*, 545 F.3d at 315.

Any duty to indemnify must be based on the facts establishing liability against the state court defendants in the Underlying Suit. *Heyden*, 387 S.W.2d at 25. The key issues in this coverage suit appear to be the cause of a fuel release and whether it was "sudden and accidental," a term of art in the Policy.[7] The parties suggest that the coverage issues involving whether the leak was "sudden and accidental" will turn on factual questions such as what "caused" the leak, how much fuel leaked, and how "sudden" the leak was (which may be determined by analysis of fuel inventory levels over time).[8] There is no indication thus far in this federal suit why these issues cannot be resolved by evaluation of the state trial record and the Policy. *See Enserch Corp.*, 952 F.2d at 1495. Nevertheless, the Court does not yet determine whether discovery of matters outside the trial record is appropriate. *See Mag Instrument, Inc. v. Sears, Roebuck & Co.*, 1990 WL 124071, at*3 (S.D. Tex. Jan 31, 1990) (Hittner, J.) ("At times, it is far more preferable to change the forum at a stage later in the case when it may be ascertained with certainty that the interests of justice so dictate." (citing *Farmer Bros. Co. v. Coca-Cola Co., Inc.*, 366 F. Supp. 725, 727 (S.D. Tex. 1973)). Therefore, the Court turns to the parties' contentions regarding potential witnesses.

---

[7]     Mid-Continent's First Amended Complaint [Doc. # 2], at 10–11; Mid-Continent's Response [Doc. # 13], at 11; PSI's Reply [Doc. # 16], at 3–5.

[8]     Mid-Continent's Response [Doc. # 13], at 11–14; PSI's Reply [Doc. #16], at 3–9.

The Court focuses first on the convenience of the key non-party witnesses. *Continental Airlines*, 805 F. Supp. at 1397. The parties point prominently to expert witnesses that they believe will most likely testify on the causation issue, Sullivan Curran and Bruce Pinkston—experts retained by Defendants Bill Head and PSI. Each of these witnesses testified in the Underlying Suit.[9] Both Curran and Pinkston reside in Houston.[10] Defendants also seek to rely on Daniel Airey and Paul Cordova, who have knowledge of matters pertaining to fuel inventory matters.[11] Mr. Airey, who resides in Austin, is an expert witness retained by Bill Head and testified in the Underlying Suit.[12] Mr. Cordova, a fact witness, is employed at the Texas Commission on Environmental Quality in Harlingen.[13] He investigated the fuel leak at issue and testified in the Underlying Suit.[14]

---

[9] *See* Mid-Continent's Response [Doc. # 13], at 11; PSI's Reply [Doc. # 16], Exh. A, at 2.

[10] Mid-Continent's Response [Doc. # 13], at 11.

[11] *See* Mid-Continent's Response [Doc. # 13], at 12–13; PSI's Reply [Doc. # 16], Exh. A, at 2–3.

[12] PSI's Reply [Doc. # 16], at 6.

[13] Mr. Cordova's residence is unknown. McAllen is approximately 35 miles west of Harlingen. *See* Google Maps, <http://maps.google.com> (last visited June 5, 2009) (type "McAllen to Harlingen" in search bar; click "Search Maps").

[14] PSI's Reply [Doc. # 16], at 3.

The location of expert witnesses is generally given less weight than the location of non-party fact witnesses, but is pertinent. Presumably, experts retained by a party are under the party's control and will travel as necessary for depositions and trials, as they did for the state court trial. Thus, the availability of compulsory process to secure the attendance of these expert witnesses is not significant in this case. As to the cost of attendance for willing witnesses, however, Houston is the preferable venue. Litigating this case in Houston is more convenient to all the experts.

The single fact witness identified so far, Mr. Cordova, works in Harlingen and presumably lives nearby. McAllen therefore is likely to be a more convenient location for him.[15] *See Volkswagen I*, 371 F.3d at 204–05 (holding that "when the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled"). Mr. Cordova is not subject to subpoena for a trial in Houston. It is unclear at this time that any prejudice to Defendants will result, as the need for additional testimony from him is not now apparent. If his deposition is necessary in this coverage case to supplement the state

---

[15] Houston is 363 miles from McAllen and 332 miles from Harlingen. *See* Google Maps (type "Houston to McAllen" and "Houston to Austin," respectively, in search bar; click "Search Maps"). Austin is 312 miles from McAllen. *Id.* (type "Austin to McAllen" in search bar; click "Search Maps") (least mileage route used). Houston, however, is materially closer to Austin; the distance is 163 miles. *Id.* (type "Houston to Austin" in search bar; click "Search Maps") (least mileage route used).

trial record, the expense of a deposition in McAllen or Harlingen is a relatively small cost for the parties to bear. In any event, the Court will revisit the venue issue before trial, if requested, if it can be shown that meaningful prejudice and inconvenience arises from the Court's lack of subpoena power over Mr. Cordova. This applies also to other live witnesses shown to be genuinely needed at a trial of this coverage case.

In regard to party witnesses, McAllen is more convenient for several individuals, particularly, Mark Barron and William Morris, who are with PSI, and Bill Carpenter and Bill Head, who are with Bill Head Enterprises.[16] It appears that these witnesses would find McAllen more convenient and would be subject to subpoena if the case were pending there, but not if the case is in Houston. On the other hand, other party witnesses reside in Houston, most notably Robert Bryant, Mid-Continent's claim adjuster.[17] Mr. Bryant's testimony is likely to be very limited, but is not available from the Underlying Suit trial record.[18] Additional possible Houston-based witnesses are Greg Rooke, a Titeflex employee who testified at trial, and other Titeflex employees, all of whom live in or near Houston. Thus, Houston is more convenient for some party witnesses and McAllen is easier for others.

---

[16]   *See* PSI's Reply [Doc. # 16], at 7–8.

[17]   *See* Mid-Continent's Response [Doc. # 13], at 15.

[18]   *See* Mid-Continent's Response [Doc. # 13], at 15.

### 3. Conclusion: Private Factors

In sum, the location of the state court records of the Underlying Suit is immaterial. As to witnesses, Houston is more convenient than McAllen for three of the four non-party key witnesses, the experts. McAllen is more convenient for the only non-party fact witness presently identified. Some party witnesses are located in each division, and thus the convenience and cost factors are neutral. The showing for transfer of venue is weak at this stage of the case. Defendants have not met their burden to clearly demonstrate that transfer of this case to McAllen is warranted.

### B. Public Factor Analysis

#### 1. Administrative Difficulties Flowing from Court Congestion

The respective burdens of the caseloads of the judges in the McAllen and Houston Divisions, respectively, are hard to assess with great accuracy. One indication of an imbalance, however, is that between January and March 2009, the judges in the Houston Division received, on average, 95 new civil cases and 13 new criminal cases.[19] During the same time period, each judge in the McAllen Division was assigned 200 criminal cases and 50 civil cases.[20] If the Court deems each civil and each criminal case to require equal judicial resources, then the caseload in

---

[19] United States District Court, Southern District of Texas: New Filings Per Judge, Exh. B to Mid-Continent's Response [Doc. # 13].

[20] *Id.*

McAllen is substantially more onerous than that in the Houston Division.  It is noted that criminal cases in the federal courts have some level of priority over civil cases, which could delay adjudication in the McAllen Division more than in the Houston Division.  *See* The Speedy Trial Act of 1974, 18 U.S.C. §§ 3161–74.

Data also show that the criminal caseload takes its toll on disposition of the civil cases in McAllen.  During the twelve month period ending March 31, 2009, Houston civil cases were open for an average of 229 days.[21]  During the same period of time, McAllen civil cases were open an average of 563 days.[22]  As a result of the staggering burdens faced by McAllen judges, in March of 2009, the Judicial Conference of the United States requested an additional judgeship be created in the McAllen Division,[23] but Congress has not yet acted on this recommendation.

The Court accordingly concludes that administratively it is preferable to retain this insurance coverage case in Houston.  This Court in Houston can reach the dispositive issues more quickly than possible in McAllen.

---

[21]     E-mail from Robbie Westmoreland, Operations Administrator, United States District and Bankruptcy Court (June 22, 2009, 16:11 CST) (on file with the Court).

[22]     *Id.*

[23]     *See* John Council, *Judicial Conference Wants New Judges, Including Seven in Texas*, TEXAS LAWYER, Apr. 13, 2009 (quoting Chief Judge Hayden Head "We've been requesting these same two judges [McAllen and Laredo] for six or eight years.  They continue to be justified by the docket and our statistics for that region and have been justified for a long time.").

### 2. Localized Interests Decided at Home

PSI argues that because the events in issue and the Underlying Suit occurred in Hidalgo County, its residents have a strong "local interest in having localized interests decided at home." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)). PSI also argues that it would be unfair to burden Houston residents with jury duty to decide this case because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gilbert*, 330 U.S. at 508–09. In response, Mid-Continent argues that there is a local interest in Houston because the claim at bar is an insurance coverage question investigated in Houston by a Houston resident and the most relevant expert witnesses retained by Defendants Bill Head and PSI in the Underlying Suit reside in Houston.

The Court finds that each Houston and McAllen have a relationship to the coverage issue, but that McAllen's interests outweigh Houston's. An indemnity suit does not exist in a vacuum. At its core, this case involves a McAllen company's claim for insurance coverage. The underlying events on which the coverage determination will be based are in the McAllen area. These circumstances create a strong interest in this suit in McAllen, far stronger than that in Houston. *See Heyden*, 387 S.W.2d at 25 (holding that the actual facts in the underlying lawsuit establish liability for the

indemnity claim). This factor weighs in favor of transfer of venue to the McAllen Division.

### 3. Governing Law and Conflict of Law

The remaining public interest factors are "the familiarity of the forum with the law that will govern the case, and the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Volkswagen II*, 545 F.3d at 315. Because the proposed transfer is between two divisions within the same district within Texas, these factors are neutral.

### 4. Conclusion: Public Factors

None of these public factors are of dispositive weight. *Action Indus.*, 358 F.3d at 340. Of the four factors, one tips in favor of each possible forum, and two are neutral. The Court is unpersuaded that there is a substantial public benefit in transferring this case from the Houston Division to McAllen.

## IV. CONCLUSION AND ORDER

For the reasons explained above, Defendants have not met their burden to demonstrate that a transfer to McAllen would be clearly more convenient for the parties or advantageous to the public. At this time, the convenience of the parties and witnesses, and the interests of justice, favor retaining this case in the Houston Division. Accordingly, it is hereby

**ORDERED** that PSI's Motion [Doc. # 3] and Bill Head's Motion [Doc. # 7] are each **DENIED**.

SIGNED at Houston, Texas, this **26th** day of **June, 2009**.

_____
Nancy F. Atlas
United States District Judge