United States District Court
Southern District of Texas
**ENTERED**
December 30, 2016
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| MID-CONTINENT CASUALTY CO., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:09-0422 |
| | § | |
| PETROLEUM SOLUTIONS, INC., | § | |
| *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Before the Court in this insurance coverage case are two issues raised by the parties since the Court issued its Amended Memorandum and Order on September 29, 2016 [Doc. # 109] ("Amended M&O"),[1] granting summary judgment on most issues presented by the parties. Familiarity with the detailed facts set forth in the Court's Amended Memorandum and Order are assumed and detail is explained below only as needed for legal analysis.

## I.    BACKGROUND

By way of overview, this case concerns a commercial general liability ("CGL") policy issued by Plaintiff Mid-Continent Casualty Co. ("Mid-Continent") to Defendant insured Petroleum Solutions, Inc. ("PSI") covering the period May 1,

---

[1]    *See Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*, Civil Action No. 4:09-0422, 2016 WL 5539895 (S.D. Tex. Sept. 29, 2016) ("Amended M&O") [Doc. # 109]. The Court refers to the page numbers of the Amended M&O as they appear in the slip opinion filed in the Court's docket.

2001, to May 1, 2002 (the "Policy").

In the 1990s, PSI sold to Bill Head and installed on his property a fuel storage system.  It was discovered in 2001 that approximately 20,000 gallons of oil had leaked into the soil.  Head notified PSI of the leak and accused PSI of violations of various duties including sale of a defective product.  PSI reported the claim to its carrier, Mid-Continent, which agreed to defend PSI under a reservation of rights.  Mid-Continent hired counsel to investigate the matter.  PSI and counsel contended that a defective flex connector manufactured by Titeflex Corporation ("Titeflex") had been the cause of the leak.  Counsel took possession of the flex connector from the site and submitted it to a laboratory for testing and storage.  At some point, the flex connector was lost or destroyed.

In February 2006, Head sued PSI in Texas state court (the "State Court Litigation").  Mid-Continent selected Victor Vicinaiz, Esq., and Jennifer Hogan, Esq. as trial and appellate defense counsel, respectively, for PSI.  Mid-Continent, defense counsel and PSI agreed that PSI would assert third-party claims against Titeflex (collectively, PSI's "Affirmative Claim") under Section 82.002 of the Texas Civil Practice and Remedies Code ("Section 82.002"), and filed the third-party action in October 2006.[2]

In January 2007, Head amended his petition to name Titeflex a co-defendant based on a strict products liability theory similar to that PSI had asserted.  Titeflex actively defended against all claims, asserting *inter alia* spoliation arguments because of the loss of the flex connector.

In March 2008, Head non-suited without prejudice his claims against Titeflex and focused his theories and trial strategy on PSI.  In May 2008, Titeflex

---

[2]      PSI pleaded a "strict products liability" claim and a negligence claim.  The negligence claim has not been a factor in the parties' or Court's analyses.

2

asserted a counterclaim against PSI for Titeflex's attorney's fees, costs and expenses (collectively, "fees") incurred after Head dismissed his claims. Titeflex subsequently amended its counterclaim to assert what was effectively a Section 82.002 claim against PSI, seeking "all past and future costs of court, reasonable expenses, and reasonable and necessary attorney's fees which were expended in defense of this action and in prosecution of this demand for indemnity."[3]

On August 12, 2008, in consultation with Mid-Continent, PSI non-suited its Affirmative Claim, which constituted a dismissal without prejudice. Titeflex, however, refused to dismiss its counterclaim for indemnity against PSI unless PSI agreed to dismiss its Affirmative Claim against Titeflex with prejudice. PSI refused this dismissal with prejudice.

The claims by Head and Titeflex were tried in September and October 2008. After a trial spread over approximately eight weeks, the jury reached a verdict in Titeflex's favor against PSI, which was memorialized in a judgment entered January 13, 2009. Titeflex was awarded $463,246.97, plus post-judgment interest ("Titeflex Judgment").[4] The Texas Supreme Court affirmed that judgment in July

---

[3]  Second [sic] Amended Counter Claims of Defendant, Titeflex Corporation, Against [PSI], *Bill Head v. Petroleum Sols., Inc.*, Cause No. C-416-06-I (398th Dist. Ct., Hidalgo County, Tex. Sept. 15, 2008), Exh. A42 to Mid-Continent Motion ("Titeflex Amended Counterclaim") [Doc. # 68-46]. Titeflex did not mention Section 82.002 in the pleading but the parties and the state court understood that the claim asserted was pursued under that statute. *See* Amended M&O [Doc. # 109], at nn. 30, 31.

[4]  This sum comprised $382,334.00 in attorneys' fees, $68,519.62 in expenses, $12,393.35 in costs, and postjudgment interest at 5% from the day of the judgment until its satisfaction. PSI paid $619,649.53 in satisfaction of the Titeflex Judgment. *See* Final Judgment, *Head v. Petroleum Sols., Inc.*, Cause No. C-416-06-1 (398th Dist. Ct., Hidalgo County, Tex. Jan. 13, 2009), Exh. 4 to PSI Motion for Summary Judgment [Doc. # 63-6], at 3-4; Letter of Coverage Denial, dated November 11, 2016, Exh. D to PSI Motion for Implied Amendment of
(continued…)

2014, as revised in December 2014.[5]

Meanwhile, in response to PSI's notice of claim in 2001, Mid-Continent defended PSI against Head's and, later, Titeflex's claims under a reservation of rights.   Mid-Continent has mounted numerous defenses to coverage.   Mid-Continent commenced this declaratory judgment action in 2009, while the Titeflex Judgment was on appeal but before it had become final.   PSI paid the Titeflex Judgment and has counterclaimed for reimbursement from Mid-Continent under the Policy.[6]

This Court, on July 29, 2016, in an extensive ruling on a wide variety of issues presented by the parties on cross motions for summary judgment [Doc. # 93], held that there was coverage under the Policy for the fees in the Titeflex Judgment awarded pursuant to Section 82.002(a) incurred in defense against Head's claims, but no coverage for fees attributable to Titeflex's defense against PSI claims or awarded pursuant to Section 82.002(g).   The Court also concluded that fact issues existed for trial regarding whether PSI satisfied its duty to cooperate under the Policy.   Upon motions for reconsideration, the Court issued an

---

(continued…)
Counterclaim and Request for Supplemental Ruling on its Motion for Summary Judgment [Doc. # 121-4], at ECF 2.

The jury also awarded Head $1,131,321.26 in damages and prejudgment interest and $91,500.00 in attorney's fees.  This award was vacated by the Texas Supreme Court.  On remand, Head's claims were dismissed by the trial court for reasons unrelated to the matters before this Court.

[5]     *See Petroleum Sols., Inc. v. Head*, 454 S.W.3d 482, 493 (Tex. 2014).

[6]     In November 2016, PSI filed a motion for leave to amend its counterclaim to additionally seek coverage rulings on a CGL insurance policy issued by Mid-Continent in 2008.  The Court will address PSI's motion to amend in a separate Memorandum and Order.

4

Amended Memorandum and Order [Doc. # 109] altering several of its rulings in limited part, but did not alter its fundamental conclusions. Significantly for present purposes, the Court concluded that a trial also was necessary on the issue of whether Mid-Continent was collaterally estopped from arguing that the Titeflex fees should be segregated into components attributable to Section 82.002(a) as opposed to Section 82.002(g). Thereafter, the Court determined the issue of whether Mid-Continent waived the right to enforce the cooperation clause in the Policy.

The parties continue to contest certain aspects of this Court's rulings. There are several issues before the Court for decision, two of which are addressed below.

First, PSI argues that the Fifth Circuit's case of *Hollybrook Cottonseed Processing, L.L.C. v. American Guarantee & Liability Insurance Co.*, 772 F.3d 1031 (5th Cir. 2014), not previously cited in the parties' briefing, establishes that there is coverage for both the Section 82.002(a) fees in the Titeflex Judgment and the Section 82.002(g) fees, as both types of fees are "damages" under the Policy's insuring clause. PSI asks the Court to alter its conclusion that Section 82.002(g) fees are not "damages because of … property damage" under the Policy. Mid-Continent contends the *Hollybrook* case is not probative.

Second, the parties seek a ruling regarding whether collateral estoppel prevents Mid-Continent from contesting coverage under the Policy for fees Titeflex incurred in defense of PSI's Affirmative Claim while Head's claim was not pending against Titeflex. The parties have stipulated to facts pertaining to this issue and to the sums potentially owed if Mid-Continent is collaterally estopped and if it is not.[7]

---

[7]        *See infra* notes 36 and 42.

The Court addresses these issues in turn.

## II. APPLICABILITY OF FIFTH CIRCUIT'S *HOLLYBROOK* DECISION

### A. Court's Analysis of Coverage for Section 82.002(g) Award

As interpreted by the Texas Supreme Court on appeal in the underlying suit, Head's allegations of property damage caused in part by a Titeflex product, which claim was dismissed, were sufficient under Section 82.002 to sustain the judgment in favor of Titeflex, as an innocent component part seller-indemnitee, against PSI, which the Supreme Court characterized as a manufacturer-indemnitor. Titeflex's claimed losses were solely its attorney's fees, costs, and expenses (collectively, "fees") incurred in the State Court Litigation. The state trial and appellate courts did not differentiate between fees incurred by Titeflex in defending against Head's product liability allegations, that is, Section 82.002(a) fees,[8] and fees Titeflex, an innocent "seller", incurred pursuant to Section 82.002(g)[9] in enforcing the Section 82.002(a) indemnity rights against "manufacturer" PSI.[10]

---

[8]   Section 82.002(a) provides: "A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action except for [circumstances not here relevant]."

[9]   Section 82.002(g) provides: "A seller is entitled to recover from the manufacturer court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages incurred by the seller to enforce the seller's right to indemnification under this section."

[10]   *See Petroleum Sols., Inc. v. Head*, 454 S.W.3d at 493; Titeflex Amended Counterclaim [Doc. # 68-46], at 4; Final Judgment [Doc. # 63-6], at 3 (awarding Titeflex "attorney fees for services rendered *through the trial of this case*" (emphasis added)).

This Court has concluded that fees awarded to Titeflex pursuant to 82.002(g) do not constitute "damages" under the Policy Insuring Agreement.[11]  In summary, the Court reasons that, because the Policy does not define "damages," the Court must look to Texas law for the definition of "damages" to ascertain if attorney's fees and costs are within the Policy's Insuring Agreement.  Under Texas law, attorney's fees incurred in the prosecution or defense of a claim generally are not compensatory damages.  Following PSI's original suggestion, the Court relied on the Texas Supreme Court's analysis in *In Re Nalle Plastics Family Limited Partnership*,[12] which discussed Section 38.001 of the Texas Civil Practice and Remedies Code, a fee-shifting provision that permits recovery of attorney's fees in certain actions "in addition to the amount of a valid claim and costs."  The Texas Supreme Court explained that the drafters' use of "in addition to" in that statute evidences that attorney's fees are a form of recovery separate from compensatory

---

[11]    Amended M&O [Doc. # 109], at 60-61.  The scope of coverage for property damage is established by the Policy's "Insuring Agreement" at section I(A)(1)(a):

>    We [Mid-Continent] will pay those sums that the insured [PSI] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.

Policy [Doc. # 63-2], at CGL Form page 1 (ECF page 14), § I(A)(1)(a).  *See* Amended M&O [Doc. # 109], at Appendix, at 94.

[12]    406 S.W.3d 168 (Tex. 2013).  The question in *In re Nalle* was whether attorney's fees are either compensatory damages or costs for purposes of supersedeas bonds, which are regulated in part by Texas Civil Practices and Remedies Code Section 52.006.  Section 38.001 and cases under that statute "demonstrate the difference between compensation owed for an underlying harm and fees that may be awarded for counsel's services."  *Id.* at 172-73.

7

damages.[13]  The Supreme Court also distinguished fees incurred in the prosecution or defense of a claim from fees that are a loss recovered through a substantive cause of action.  "If the *underlying* suit concerns a claim for attorney's fees as an element of damages . . . , then those fees may properly be included in a judge or jury's compensatory damages award."[14]

Applying this reasoning, this Court concluded that the Titeflex Judgment, to the extent it included fees under Section 82.002(a), was compensation for a "loss arising out of a products liability action"[15] because "loss," *see* Section 82.002(b), is defined to include "court costs and other expenses, reasonable attorney fees, and any reasonable damages."  The Court held that an award of fees under

---

[13]    *Id.* at 173 ("[S]uits cannot be maintained solely for the attorney's fees; a client must gain something before attorney's fees can be awarded." (quoting *MBM Fin. Corp. v. Woodlands Operating Co.,* 292 S.W.3d 660, 666 (Tex. 2009))).

[14]    *Id.* at 175 (interpreting "compensatory damages" in Texas supersedeas bond statute); *see also Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035, 1038 (5th Cir. 2014) ("For example, attorney's fees are considered damages if the fees are incurred in litigation with a third party, or if the fees are unpaid legal bills sought in a breach of contract action against a client, or if the fees are expended before litigation to obtain title from a third party to whom defendants had wrongfully transferred title."); *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 111 (Tex. 2009) ("We also agree with NDR that it may recover damages [in legal malpractice action] for attorney's fees it paid to its attorneys in the underlying suit to the extent the fees were proximately caused by the defendant attorneys' negligence." (footnote omitted)).

[15]    Amended M&O [Doc. # 109], at 60.  "Products liability action" is defined in Section 82.001(b) to "mean[] any action against a manufacturer or seller for recovery of damages *arising* out of personal injury, death, or *property damage allegedly caused by a defective product* whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories." (emphasis added).

8

Section 82.002(a) is an award of compensatory damages, and thus is covered by the Policy as "damages."[16]

The Court concluded, however, that because Section 82.002(g) grants recovery of fees incurred "to enforce" an innocent seller's Section 82.002(a) indemnification rights, Section 82.002(g) fees do not meet the definition of compensatory "damages" under Texas law or the Policy.[17]   These fees are statutorily distinct from the "loss" covered by Section 82.002(a) as defined in Section 82.002(b).  Rather, Section 82.002(g) fees are analogous to recovery under Section 38.001, a fee-shifting provision.   Under the theory of *In re Nalle*, a Section 82.002(g) award is ancillary to the substantive indemnification cause of action created by Section 82.002(a), and is not compensatory damage under Texas law.  Had the Section 82.002 drafters intended fees under subsection (g) simply to be compensable as "loss" under the statute, they could have so stated in subsection (a) and there would have been no need for subsection (g).  The Court will not render Section 82.002(g) superfluous by construing it as encompassed within Section 82.002(a).[18]   Moreover, because Section 82.002(g) fees focus on enforcement of Section 82.002(a) indemnification rights, Section 82.002(g) fees

---

[16]   See Amended M&O [Doc. # 109], at 60.

[17]   *See id.* at 60-61.

[18]   *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void, or insignificant.'" (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))).

are not a recovery "because of" "property damage" and thus are not covered by the Policy as "damages."[19]

## B. *Hollybrook*'s Holding and Its Application to a Section 82.002(g) Recovery

PSI contends the Fifth Circuit's decision in *Hollybrook Cottonseed Processing, L.L.C. v. Am. Guarantee & Liab. Ins. Co.*, 772 F.3d 1031 (5th Cir. 2014), is grounds for reconsideration of the Court's ruling that fees awarded pursuant to Section 82.002(g) are not "damages" covered by the Policy. The Court is unpersuaded.

*Hollybrook* is a case addressing the Louisiana redhibition statute, Louisiana Civil Code article 2545 ("article 2545"). Plaintiff Hollybrook Cottonseed Processing, L.L.C. ("Hollybrook") purchased and used equipment manufactured by Carver, Inc. ("Carver") in its processing facility.[20] Hollybrook alleged that the equipment was defective and unreliable, which caused significant production problems and economic injury.[21] Hollybrook obtained a multi-million dollar jury verdict for violation of article 2545 against Carver's excess insurer ("American")

---

[19]    Amended M&O, at 60-61; *see id.*, at nn. 94 & 102. The Policy's "Insuring Agreement" provides: "We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. …" *See* Policy, § I(A)(1)(a), quoted at Amended M&O [Doc. # 109], at Appendix, at 94.

[20]    *Hollybrook Cottonseed Processing, L.L.C. v. Am. Guarantee & Liab. Ins. Co.*, 772 F.3d 1031, 1033 (5th Cir. 2014).

[21]    *Id.* at 1033. Hollybrook sued Carver, Carver's primary insurer, Sentry Insurance Company, and Carver's excess insurer, American Guarantee & Liability, for violation of article 2545 and breach of contract. Hollybrook settled with Carver and Sentry prior to trial. *Id.*

under Louisiana's direct action statute.[22]  In post-trial briefing, Hollybrook sought to recover its attorney's fees as "damages" allowed by article 2545 and thus covered by the excess insurance policy.[23]  On appeal, the Fifth Circuit agreed, holding that the attorney's fees awarded under article 2545 constituted damages covered by the policy.[24]

In *Hollybrook*, the insurance policy, like the Policy at bar, obligates the insurer to "pay as damages because of … 'property damage' … ."[25]  The question in *Hollybrook* was, as here, whether attorney's fees are "'damages' caused by property damage."[26]  The Fifth Circuit stated that, because the American "policy does not define the word 'damages', it is given its ordinary meaning, and any ambiguity must be resolved against the insurer in favor of coverage."[27]

Both the *Hollybrook* insured and PSI's claims for coverage arise out of product liability actions.  Both cases are brought for fees awarded under statutes

---

[22]   *Id.*

[23]   *Id.*

[24]   *Id.* at 1037.

[25]   *See Hollybrook*, 772 F.3d at 1036; Policy [Doc. # 63-2], at CGL Form page 1 (ECF page 14), § I(A)(1)(a), quoted at Amended M&O, Appendix, at 94.

[26]   *Id.* at 1036.

[27]   *Id.*  Likewise, under Texas law, the meaning of an insurance contract is determined under the standards applicable to contracts generally, *see One Beacon Ins. Co. v. Crowley Marine Servs.*, 648 F.3d 258, 271 (5th Cir. 2011), and, if the contract is subject to more than one reasonable interpretation, it will be deemed ambiguous and interpreted in favor of coverage for the insured.  *Lambrecht & Assocs., Inc. v. State Farm Lloyds*, 119 S.W.3d 16, 20 (Tex. App.—Tyler 2003, no pet.) (citing *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997)).

that expressly provide for awards of attorney's fees as an element of damages available to a plaintiff.  Nevertheless, the reach of *Hollybrook* does not extend as far as PSI advocates.  First, *Hollybrook*'s holding is grounded in specific Louisiana precedent.  The Fifth Circuit's statutory interpretation of article 2545 relies heavily on Louisiana case law that "specifically stated about redhibition actions that '[t]he buyer's reasonable attorney fees are nothing more than an element of the buyer's damage.'"[28]

Second, structurally, article 2545 provides recovery for the buyer of a defective good, much like Section 82.002(a).[29]  Article 2545 makes attorney's fees part of the substantive cause of action for redhibition, as does Section 82.002(a) through the definition of "loss" in Section 82.002(b), *i.e.*, "court costs and other expenses, reasonable attorney fees, and any reasonable damages."  In contrast,

---

[28] *Hollybrook*, 772 F.3d at 1036 (quoting *Borne v. Mike Persia Chevrolet Co.*, 396 So.2d 326, 330 (La. Ct. App. 1981). The Fifth Circuit's analysis defines "damages" in the context of redhibition by reference to Louisiana precedent and the legislative history of article 2545.  *See Hollybrook*, 772 F.3d at 1036 ("Louisiana courts have specifically stated about redhibition actions that '[t]he buyer's reasonable attorney fees are nothing more than an element of the buyer's damage.'" (quoting *Borne v. Mike Persia Chevrolet Co.,* 396 vSo.2d 326, 330 (La. Ct. App. 1981))); *id.* ("[O]ne commentator on Louisiana law has correctly explained that the legislative history of the redhibition article 'clearly stated that its purpose was to include attorney fees in the liability for damages of … a seller.'" (quoting Ronald J. Scalise, Jr., 6 *La. Civ. L. Treatise*, *Law of Obligations* § 12.22 (2d ed. 2014))).

[29] Article 2545 provides, in relevant part, that "[a] seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for … damages and reasonable attorney fees."  LA. CIV. CODE art. 2545.  Section 82.002(a) provides: "A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action except for [circumstances not here relevant]."  "Loss" includes "reasonable attorney fees, and any reasonable damages."  TEX. CIV. PRAC. & REM. CODE § 82.002(b).

Section 82.002(g) is a fee-shifting provision for fees and damages incurred "to *enforce* the seller's right to indemnification" under [Section 82.002(a)].[30]   Sections 38.001[31] and 82.002(g) each are auxiliary to a substantive cause of action, while fees under article 2545 and Section 82.002(a) constitute compensatory damages.

The Policy provides coverage for "damages because of … 'property damage' … ."[32]   Section 82.002(g) fees do not constitute such "damages" under prevailing Texas law.   *Hollybrook*'s analysis of Louisiana law on redhibition does not support a holding to the contrary.

## III.   COLLATERAL ESTOPPEL ON SEGREGATION OF FEES ISSUE

During the course of the State Court Litigation, Titeflex proved it suffered "losses" cognizable under Section 82.002 consisting of attorney's fees, expenses and costs (collectively, "fees") incurred defending against Head's products liability claims and PSI's Affirmative Claim under Section 82.002.   As noted earlier, PSI asserted its third-party claim for indemnity against Titeflex on October 5, 2006, and Head asserted his direct claim on January 30, 2007.   PSI non-suited its Affirmative Claim in mid-August 2008, more than five months after Head dismissed his action against Titeflex in March 2008.   The Titeflex Judgment comprises fees incurred in (1) defense against Head's products liability claims; (2) defense against PSI's Affirmative Claim under Section 82.002(a); and (3) prosecution  for fees from PSI pursuant to Section 82.002(g) for enforcement of

---

[30]   TEX. CIV. PRAC. & REM. CODE § 82.002(g) (emphasis added).  *Compare id*. *with id.* at § 82.002(a) *and* § 82.002(b).

[31]   TEX. CIV. PRAC. & REM. CODE § 38.001 (the party may "recover reasonable attorney's fees … in addition to the amount of a valid claim and costs.").

[32]   Policy [Doc. # 63-2], at CGL Form page 1 (ECF page 14), § I(A)(1)(a).  *See* Amended M&O [Doc. # 109], at Appendix, at 94.

13

Titeflex's Section 82.002(a) indemnity claim.  The jury verdict and Titeflex Judgment did not segregate these components.

This Court concluded on summary judgment that the Policy covers the Titeflex Judgment for all fees awarded for indemnification due from PSI under Section 82.002(a), *i.e.*, for Titeflex's "loss" incurred in defending against Head's claims from January 30, 2007 to approximately March 7, 2008.  The Court further concluded that to the extent fees during this period were for work defending against Head's claims, which work was also helpful in countering PSI's claims, the fees are recoverable under the Policy.[33]

In light of the Court's analysis,[34] Mid-Continent contends that at most the Policy should be deemed to cover only fees Titeflex incurred between January 30, 2007 and March 7, 2008, when Head dismissed his claim against Titeflex, which is the period when Titeflex actually incurred fees for which Section 82.002(a) provides indemnity.  PSI counters that Mid-Continent is collaterally estopped from contesting the lack of segregation among these components of the Titeflex Judgment because the segregation issue was litigated in the state court at trial.  In the Amended M&O, this Court held that a trial was necessary on this question.[35] The parties have stipulated to the operative facts and seek a ruling as a matter of law.[36]

---

[33]     *See* Amended M&O [Doc. # 109], at 78.

[34]     Mid-Continent opposes on many grounds the Court's conclusion that there is coverage for any fees owed by PSI pursuant to the Titeflex Judgment.

[35]     *See* Amended M&O [Doc. # 109], at 74-75.

[36]     *See* Stipulations of Fact and Agreed Evidence Regarding Collateral Estoppel ("Stipulations") [Doc. # 117]. The parties also have stipulated to the total recovery
(continued…)

### A.    Factual Record on Segregation Issue in State Court Litigation

The state trial record reveals that PSI's counsel raised the issue of the segregation of fees Titeflex incurred in defense of PSI claims as contrasted with fees in defense of Head's claims.  First, during cross-examination on October 22, 2008, Victor Vicinaiz, Esq., questioned Titeflex's attorney, George Petersmarck, Esq., regarding whether Titeflex distinguished between fees in defense of Head's claims and fees in defense of PSI's Affirmative Claim.  The witness testified that Titeflex did not segregate those fees because they were completely intertwined:

> Viciniaz:  Okay.  Now, with respect to the fees you are claiming and they are somewhat under fees and expenses of – something right under 400,000, correct?
>
> Petersmarck:  Whatever it is, 389, something like that, yeah.
>
> Viciniaz:  Now, with respect to that, have you separated or identified and segregated the fees incurred, that you incurred, both you and [Titeflex counsel Thomas Cowen], from the lawsuit that [PSI] filed against you from the lawsuit that [Head] filed against you?
>
> Petersmarck:  I was unable to do that.
>
> Vicinaiz:  Okay.
>
> Petersmarck:  Because the – the reason we couldn't do it is because it's all intertwined. ... [Y]our lawsuit against my client was for complete indemnification based on a product liability theory for all damages, including attorneys' fees and costs that you would have incurred or expended on behalf of the defense of PSI. … [37]

---

(continued…)
depending on whether the Court does or does not find collateral estoppel. *See infra* note 42.

[37]   Stipulations, Appendix A, Trial Transcript, Oct. 22, 2008 [Doc. # 117], at 14, at ECF at 24.

*   *   *   *

Vicinaiz:  PSI sued you, correct?

Petersmarck:   Correct.

Vicinaiz:    That was for an allegation of a defective product that Titeflex made?

Petersmarck:   Correct.

Vicinaiz:  But plaintiff Bill Head sued you on an allegation that the product was defective, correct?

Petersmarck:  Correct.

Vicinaiz:   So there was [sic] two parties suing you alleging that there was a defective product?

Petersmarck:  That's correct.

Vicinaiz:  And those two lawsuits, one by PSI and one by Bill Head, were pending together for about 14 months if you look at that time line?

Petersmarck:  That's approximately correct.

Vicinaiz:  Okay.  So you were defending during those 14 months two lawsuits?

Petersmarck:   Well, defending is a relative term.  The plaintiff [Head] never submitted to us any discovery.  The only defense costs that we incurred, actually, as I recall it, was the answer to the complaint.

Vicinaiz:  Okay.

Petersmarck:    And the discovery that we took relative to what happened and who the witnesses were and so on.  That was all intertwined.

Vicinaiz:  Okay. Do [sic] you separate those fees?

16

Petersmarck:  There's no way to separate them.

*   *   *   *

Vicinaiz:  And did you separate any of the fees from the date of the dismissal by Bill Head – at that time there was no one suing you – to the present?

Petersmarck:   From Bill Head?  You were still suing me.

Vicinaiz:   Okay.

Petersmarck:    After Bill Head dismissed their claim, your claim was still going.

Vicinaiz:  And PSI dismissed you in August?

Petersmarck:  Yeah.

*   *   *   *

Vicinaiz:  Did you segregate the fees and identify the fees incurred from August until, for example, today?

Petersmarck:  No. [38]

Additionally, during the charge conference, on November 3, 2008, PSI's appellate counsel, Jennifer Hogan, Esq., objected to other parties' proposed jury charges, arguing that the jury should be instructed "not to award [to Titeflex] attorneys' [sic] fees that are not segregated and are not recoverable under Chapter 82 … ."[39]   Hogan  tendered  to  the  state  court  the  following  proposed  jury

---

[38]    *Id.* at 15-17, at ECF 25-27.

[39]    Stipulations, Appendix A, Trial Transcript, Nov. 3, 2008 [Doc. # 117], at 202-03, at ECF 35-36.  Counsel for PSI argued that the state court was required to instruct the jury that the fees must be segregated.  Counsel's argument was simply:

(continued…)

17

instruction regarding how to calculate Titeflex's attorney's fees, and a comparable proposed instruction regarding expenses:

> Do not include in your answer any attorney's fees that were or will be incurred by Titeflex that are related solely to Titeflex's defense of the claims brought against it by Petroleum Solutions, Inc.[40]

The state trial court simply stated that Hogan's objections were "overruled" and "refused" the proposed jury instructions without any explanation or reasoning.[41]

---

> (continued…)
>
> MS. HOGAN: Okay, Your Honor. We object that the attorneys' fees and expenses questions are not recoverable except by statute or contract. There is no contract, so Titeflex is entitled to attorneys' fees only submitted by statute. The only pleaded basis is Chapter 72 [sic] of the Civil Practices and Remedies Code. Titeflex's fees and expenses and then both of its questions 15 and 16 are – are not – are – therefore, are recoverable only if they are authorized by Chapter 82, and the jury's consideration of fees and expenses should be limited to those recoverable under Chapter 82. *The attorneys' fees must be segregated. We have tenders, Your Honor. We would ask the jury –*
>
> THE COURT: Bring them forward and give copies to Counsel.
>
> MS. HOGAN: Okay. We have -- we have -- there is [sic] four of them. There are four requested tenders, Your Honor, two for the attorneys' fees that should be given in conjunction with the attorneys' fees question and two that should be given in conjunction with the expenses question. *We ask that the jury be instructed that -- not to award attorneys' fees that are not segregated and are not recoverable under Chapter 82, and that's what these tenders are entitled --*
>
> *THE COURT: I just refused it.*

Stipulations [Doc. # 117], Exhibit A, at 202-03 (emphasis added).

[40]   *Id.* at ECF 39, 38.

[41]   *Id.* at 202-03, at ECF 38-39.

### B.  Collateral Estoppel Analysis on Fee Segregation Issue

PSI contends that Mid-Continent is estopped from arguing that the Policy does not cover the fees Titeflex incurred in defense of PSI's Affirmative Claim because that issue was decided in the State Court Litigation by virtue of the quoted testimony and rulings on the proffered jury instructions.  Mid-Continent responds that the issue was not fully litigated or determined, that it is not in privity with PSI, and that the brief rulings do not entitle PSI to collateral estoppel.  The Court concludes that Mid-Continent is in privity with PSI but that the issue was not fully litigated, and thus Mid-Continent is not collaterally estopped from arguing segregation in this coverage proceeding.[42]

Collateral estoppel, or issue preclusion, "'prevents relitigation of particular issues already resolved in a prior suit.'"[43]  Texas law governs the preclusive effect of the Texas court's rulings in the present case.[44]  In Texas, collateral estoppel requires a party to" establish that: '(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action.'"[45]

---

[42]  The parties stipulate that if collateral estoppel does not apply, damages are $136,499.97 plus $51,104.40 in post-judgment interest, for a total of $187,604.17.  If estoppel does apply, it is agreed that damages are $278,545.36 plus $104,285.11 in post-judgment interest, for a total of $382,830.47.  *See* Joint Pretrial Order [Doc. # 126], at 6 ¶¶ 31a, 31b; *accord*, Advisory [Doc. # 135], at 1.

[43]  *Primo v. Great Am. Ins. Co.*, 455 S.W.3d 714, 728 (Tex. App.—Houston [14th Dist.] 2014, pet. granted) (quoting *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992)).

[44]  *Weaver v. Tex. Capital Bank N.A.*, 660 F.3d 900, 906 (5th Cir. 2011).

[45]  *John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 288 (Tex. 2002); *see also State Farm Fire and Cas. Co. v. Fullerton*, 118 F.3d 374,
(continued…)

"For collateral estoppel purposes, 'full and fair litigation' means actual litigation in the previous suit of the same fact issues."[46]  "[A]n issue was 'actually litigated' when it was properly raised, by the pleadings or otherwise, and it was submitted for determination, and determined."[47]  "[C]ollateral estoppel applies when the party against whom collateral estoppel is being asserted had a full and fair opportunity to litigate the issue."[48]  The issue in the pending suit must be

---

(continued…)
377 (5th Cir. 1997) (quoting *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994)); *Matter of Garner*, 56 F.3d 677, 679 (5th Cir. 1995) ("Under Texas law, collateral estoppel 'bars relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit, regardless of whether the second suit is based upon the same cause of action.'" (citing *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984))), *abrogated on other grounds by Kawaauhau v. Geiger*, 523 U.S. 57 (1998); *In re Dang*, Civil Action No. H–15–3342, Adversary Nos. 15–3089, 15–3088, 2016 WL 6208890, at *3 (S.D. Tex. Oct. 26, 2016) (Rosenthal, C.J.) (reciting collateral estoppel elements in reviewing an appeal from a bankruptcy court's judgment).

[46]   *T.L. Dallas (Special Risks), Ltd. v. Elton Porter Marine Ins. Agency, Inc.*, Civil Action No. 4:07–cv–0419, 2008 WL 7627807, at *4 (S.D. Tex. May 22, 2008) (citing 48 TEX. JUR. 3D JUDGMENTS § 516); *see also McDonald v. Houston Brokerage, Inc.*, 928 S.W.2d 633, 637 (Tex. App.—Corpus Christi 1996) (citing *Puga v. Donna Fruit Co.*, 634 S.W.2d 677, 678 (Tex. 1982)).

[47]   *Rexrode v. Bazar*, 937 S.W.2d 614, 617 (Tex. App.—Amarillo 1997, no writ); *accord Tenet Health Sys. Hosps. Dallas, Inc. v. N. Tex. Hosp. Physicians Group, P.A.*, 438 S.W.3d 190, 203 (Tex. App.—Dallas 2014) (citing *Rexrode*, 937 S.W.3d at 617); *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384-85 (Tex. 1985) (adopting and quoting Section 27, comment (d) of the RESTATEMENT (SECOND) OF JUDGMENTS (1982), which states that actual litigation occurs "[w]hen an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined.").

[48]   *Tenet Health Sys. Hosps. Dallas, Inc.*, at 203 (Tex. App.—Dallas 2014) (citing *Tex. Dep't of Public Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001)).

identical to the issue in the first litigation.[49]

"Strict mutuality of parties is not required."[50]  "It is only necessary that the party against whom collateral estoppel is being asserted was a party or in privity with a party in the first action."[51]  The party asserting collateral estoppel has the burden of pleading and proving its elements.[52]

The issue actually presented and determined in the state court suit was the total amount of fees and expenses incurred by Titeflex in that suit through the trial.[53]  That issue focused on the total amount of counsel's work and expenses in the state court case.  PSI's counsel, selected and paid by Mid-Continent, sought for

---

[49]   *Id*. (citing *State & Cnty. Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001)); *SWEPI, L.P. v. Camden Res., Inc.,* 139 S.W.3d 332, 339 (Tex. App.—San Antonio 2004, pet. denied).

[50]   *Id.* (citing *Petta*, 44 S.W.3d at 579); *Richards v. Comm'n for Lawyer Discipline*, 35 S.W.3d 243, 249 (Tex. App.—Houston [14th Dist.] 2000, no pet.)).

[51]   *MGA Ins. Co. v. Charles R. Chestnutt, P.C.*, 358 S.W.3d 808, 817 (Tex. App.—Dallas 2012).

[52]   *Calabrian Corp. v. All. Specialty Chems., Inc.*, 418 S.W.3d 154, 158 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Scurlock Oil Co. v. Smithwick*, 787 S.W.2d 560, 562 (Tex. App.—Corpus Christi 1990) ("The burden is on appellants to present sufficient evidence to establish that the doctrine of collateral estoppel should apply." (citing *Traweek v. Larking*, 708 S.W.2d 942, 945 (Tex. App.—Tyler 1986, writ ref'd n.r.e.)).

[53]   The questions submitted to the jury in the State Court Litigation regarding the Titeflex Counterclaim were: (1) "Is Petroleum Solutions, Inc. a manufacturer?"; (2) "Is Titeflex Corporation a seller?"; (3) "What is a reasonable fee for the necessary services of the attorneys for Titeflex Corporation in this case, stated in dollars and cents?"; and (4) "What amount, if any, in expenses were reasonably incurred by Titeflex Corporation in this lawsuit?"  *See* Court's Charge to the Jury, *Bill Head v. Petroleum Sols., Inc.*, Cause No. C-416-06-I (398th Dist. Ct., Hidalgo County, Tex. Nov. 5, 2008), Exh. A46 to Mid-Continent Motion [Doc. # 68-50], at 32–34 (Questions 13–16).

21

the first time during trial to raise the issue of the timing and subject matter of the work for which Titeflex's fees were sought, but were denied a meaningful hearing and a reasoned determination on that question.   The jury was not given the opportunity to assess whether allocation would be proper.

### 1.    Privity in the State Court Litigation on Segregation Issue

In order to assess whether collateral estoppel should apply, the Court turns first to the question of whether PSI and Mid-Continent were in privity regarding this issue before the state court.

There are "dangers of formalism tied up in the word 'privity' … ."[54] Generally, "[p]arties are in privity for the purposes of collateral estoppel when: (1) they control an action even if they are not parties to it; (2) their interests are represented by a party to the action; or (3) they are successors in interest, deriving their claims through a party to the prior action."[55]   The Fifth Circuit opinion in *Bay Rock* informs the privity issue in the context of insurance coverage specifically.[56] In *Bay Rock*, privity between the insurer and the insured was held to exist in the underlying suit even though the insurer, Mid-Continent, defended under a reservation of rights.   The Fifth Circuit stated:

---

[54]    *State Farm Fire and Cas. Co. v. Fullerton*, 118 F.3d 374, 384 (5th Cir. 1997) (citing WRIGHT, MILLER & COOPER, 18 FEDERAL PRACTICE & PROCEDURE § 4448 (1981)).

[55]    *McCoy v. Hernandez*, 203 F.3d 371, 374 (5th Cir. 2000) (citing *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 890 (Tex. 1998)) (analyzing whether a § 1983 plaintiff may invoke collateral estoppel against officers following a favorable ruling in a prior criminal proceeding).

[56]    The Fifth Circuit affirmed the district court's conclusion that the insurer of a defendant in underlying suit, defending under a reservation of rights, was collaterally estopped from challenging the standing of underlying suit plaintiff's insurer to bring the first action.

The requisite degree of privity between an insurer and its insured can exist if:  (1) the insurer controlled the insured's defense in the liability suit; and (2) the insurer and the insured do not hold conflicting positions *with respect to the issue determined in the liability suit*.[57]

Regarding the first factor, the evidence reveals that Mid-Continent in fact generally controlled and had substantial input into PSI's defense in the underlying State Court Litigation.[58]  As evidence to the contrary, Mid-Continent emphasizes

---

[57]   *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 111 (5th Cir. 2010) (emphasis added).

[58]   Though Mid-Continent assumed PSI's defense subject to a reservation of rights, there is summary judgment evidence indicating defense counsel, selected and paid by Mid-Continent, was in contact with Mid-Continent before and throughout the State Court Litigation and received Mid-Continent's input with respect to legal strategy.  *See, e.g.*, Letter from Steve Hintze to Elizabeth Neally, dated August 27, 2002, Exh. 13 to PSI Motion [Doc. # 63-15] (Mid-Continent adjuster thanking Neally, who was retained by Mid-Continent in 2002 to investigate the leak, retain experts and represent PSI in future litigation, for her legal analysis regarding Titeflex's obligations under the Texas Products Liability Act ("TPLA") and suggesting "[l]ets [sic] assert the indemnity claim under TPLA, and common law indemnity, and UCC, etc."); Letter from Mid-Continent's Robert Bryant to defense counsel Victor Vicinaiz, dated September 26, 2006, Exh. 16 to PSI Motion Letter [Doc. # 63-18] (summarizing Mid-Continent's phone conversation with defense counsel held earlier that day, during which, among other things, Mid-Continent expressed that "we will want to add [Tite Flex as a third party] … You said you will add them as a responsible third party and also as Third Party Defendants for contribution."); Letter from Jennifer Hogan to Robert Bryant, dated February 29, 2008, Exh. 17 to PSI Motion [Doc. # 63-19] (defense counsel's analysis of availability of appellate review, assessment of Head's claims and PSI's defenses, and recommendation for future legal strategy); Letter from Victor Vicinaiz to Robert Bryant, dated May 14, 2008, Exh. 24 to PSI Motion [Doc. # 63-26] (defense counsel's recommendation to dismiss Titeflex and related rationale, addressed to Mid-Continent); Email Exchange between Robert Bryant and Victor Vicinaiz, Exh. 25 to PSI Motion [Doc. # 63-27] (Bryant instructs Vicinaiz to "[p]lease proceed in dismissing our claims to Titeflex as a Third-party defendant, but keep them designated as a responsible third-party."  Vicinaiz responds that he has "received [Bryant's] message and will non-suit Titeflex first thing in the morning."); Letter from Victor Vicinaiz to Robert Bryant, dated
(continued…)

23

PSI's refusal to settle the Affirmative Claim on the terms Titeflex and Mid-Continent sought.  There is no argument that this divergence of views on strategy affected the rest of the defense or the trial strategy, however.  Thus, this factor supports imposition of collateral estoppel.

The second factor focuses on whether Mid-Continent and PSI held "conflicting positions with respect to the issue determined in the liability suit." The Court discerns no conflict here.  Mid-Continent and PSI were aligned in seeking to limit Titeflex's fee award as much as possible.  Both Mid-Continent and PSI would have benefitted from the state trial court's granting Hogan's proposed jury instructions and ruling that the jury could not award Titeflex Section 82.002 fees that were not appropriately segregated.  PSI feared there would be no insurance coverage and wanted to limit its potential exposure; similarly, Mid-Continent, if there was coverage under the Policy, sought to pay as little as possible.  Substantively, both wanted to prevent any award to Titeflex of fees incurred against PSI's claims (as opposed to fees in defense of Head's claims) and, more generally, to prevent an award of all fees that were not segregated as between the PSI and Head claims.  The fact that state trial and appellate counsel were not focused on how the segregation issue would impact coverage questions, as presented in the declaratory judgment suit at bar, is immaterial.  Thus, Mid-Continent's argument that there was no privity between itself and PSI for collateral estoppel purposes under Texas law is rejected.

---

(continued…)
August 12, 2008, Exh. 27 to PSI Motion [Doc. # 63-29] (defense counsel's recommendation that PSI non-suit with prejudice Titeflex, addressed to Mid-Continent); *see generally* Policy, § IV(2), at Amended M&O [Doc. # 109], at Appendix, at 95-96.

24

Case 4:09-cv-00422   Document 154   Filed in TXSD on 12/30/16   Page 25 of 29

## 2.    Full and Fair Litigation of Identical Issue

The Court next addresses whether the issue of segregation of Titeflex fees attributable to defense against the PSI claims as opposed to the fees attributable to defense against the Head claim was fully and fairly litigated.[59]  PSI argues that the segregation issue was fully litigated based on Vicinaiz's questions to Titeflex's counsel during cross-examination, Hogan's argument and tender of two proposed instructions during the jury charge conference, and the state court's ruling rejecting Hogan's argument and tendered jury charges.  The Court is not persuaded.  First, PSI points to no evidence that any issue of segregation was pleaded pretrial in the state court suit or placed in any pretrial submission.[60]  It is plain that the state trial court permitted PSI's counsel to make only the most cursory argument at the jury

---

[59]    PSI invokes the Fifth Circuit's decision in *Bay Rock*, 614 F.3d 105, as the standard for collateral estoppel in insurance coverage cases.  *Bay Rock* is informative and is consistent with Texas law, which is primarily applicable.  In *Bay Rock*, the Fifth Circuit stated:

> An insurer in a coverage case will be barred from re-litigating a particular issue from the underlying liability case if: (1) the issue raised in the coverage suit was raised and determined in the liability suit; (2) the issue determined the liability suit was essential to the judgment in the liability suit; and (3) the necessary requirement of privity exists between the insurer and the insured.

*Id.* at 110.  The Fifth Circuit's "raised and determined" in *Bay Rock* is equivalent to the "full and fair litigation," "actually litigated," and "full and fair opportunity to litigate" element in the Texas collateral estoppel rubric.

[60]    In contrast, in *Calabrian Corp. v. All. Specialty Chemicals, Inc.*, 418 S.W.3d 154, 159-60 (Tex. App.—Houston [14th Dist.] 2013, no pet.), the court found the issue of personal jurisdiction was "fully and fairly litigated" in the first action where a party moved to dismiss based on lack of jurisdiction, the parties briefed the jurisdiction issue, and the court denied motion to dismiss.

P:\ORDERS\a2008-2009\2009\0422CE.docx  161230.1724

charge conference.  The legal argument was not raised in the state court until the charge conference.[61]  The segregation issue thus was not "properly raised."[62]

Furthermore, in making legal rulings, the trial judge simply summarily "overruled" a vague objection to the absence of segregation and, in one word, "refused" the requested jury instructions.   There was no consideration of the issue, nor explanation of the reasons for denial of the requests.[63]  The segregation issue thus was not "determined" by either the jury or the state trial court.[64]   "A basic tenet of collateral estoppel is that an issue must have been actually resolved for it to have preclusive effect … [w]here the first fact finder did not determine the ultimate fact question at issue in the second proceeding, but merely denied the

---

[61]   The testimony elicited from Titeflex's witness was that segregation was not possible.  *See supra* Section III.A.

[62]   *See, e.g., Calabrian Corp. v. All. Specialty Chemicals, Inc.*, 418 S.W.3d 154, 159-60 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (finding issue of personal jurisdiction was "fully and fairly litigated" in first action where party moved to dismiss based on lack of jurisdiction, parties briefed jurisdiction issue, and court denied motion to dismiss); *Rexrode v. Bazar*, 937 S.W.2d 614, 617 (Tex. App.—Amarillo 1997, no writ) (concluding negligence issue was properly raised because it was alleged in the original petition).

[63]   Indeed, Titeflex did not make any argument in support of the global submission for its fees.  *See* State Court Litigation Record [Doc. # 117], at 202-203.   In response to Hogan's arguments, the state court responded "[t]hat's—that objection is overruled."   *Id.* at 202:5-12.   After Hogan described PSI's tendered jury charges, the state court stated "I just refused it."  *Id.* at 203:1-7.  The Texas Court of Appeals deemed the issue "waived."  The parties do not argue this ruling has import for collateral estoppel purposes.

[64]   The Court does not adopt Mid-Continent's position that a necessary element of collateral estoppel is a jury determination.  *See United States v. Stauffer Chem. Co.*, 464 U.S. 165, 170-71 (1984) (discussing collateral estoppel under federal law).

requested relief, collateral estoppel does not apply."[65]  "The scope of the collateral estoppel doctrine is circumscribed by [ ] particularized findings … ."[66]  There are no particularized findings – or conclusions of law – in the state record with respect to the segregation issue.

PSI suggests that the state court determined the segregation issue as a matter of law when it held that the segregation issue was not to go to the jury.[67]  The Court is unpersuaded.  In addition to the state trial court's superficial treatment of the issue, the Texas Court of Appeals summarily ruled the issue was waived.[68]  The appellate confusion reinforces this Court's conclusion that there was not a "determination" on the merits of the segregation issue.

For all these reasons, PSI has failed to meet its burden to prove that the segregation issue was actually litigated in the state court case.[69]  The Court

---

[65]   *Tenet Health Sys. Hosps. Dallas, Inc. v. N. Tex. Hosp. Physicians Group, P.A.*, 438 S.W.3d 190, 204 (Tex. App.—Dallas 2014) (citing *SWEPI, L.P. v. Camden Res., Inc.,* 139 S.W.3d 332, 339 (Tex. App.—San Antonio 2004, pet. denied).

[66]   *Matter of Miller*, 156 F.3d 598, 602 (5th Cir. 1998) (discussing collateral estoppel under Texas law in the context of a bankruptcy action) (citing *Marine Shale Processors, Inc. v. U.S. E.P.A.*, 81 F.3d 1371, 1379 (5th Cir. 1996), *subsequent mandamus proceeding sub nom. In re Marine Shale Processors, Inc.,* 91 F.3d 16 (5th Cir. 1996)).

[67]   *See* PSI Response to Mid-Continent's Supplemental Brief [Doc. # 122], at 9 ("[C]ounsel for PSI argued that Titeflex's attorneys' [sic] fees should be segregated, the court made its determination that the tendered instruction should not be given, and the ruling was final and appealable.  As such, the segregation issue was fully litigated … .")

[68]   *Petroleum Sols., Inc. v. Head*, 454 S.W.3d 518, 577 (Tex. App.—Corpus Christi 2011), *aff'd in part, rev'd in part*, 454 S.W.3d 482 (Tex. 2014).

[69]   To the extent the Court has discretion regarding application of collateral estoppel, the Court exercises that discretion to decline to apply the estoppel.  Generally, courts have broad discretion with respect to collateral estoppel invoked in an
(continued…)

concludes Mid-Continent is not collaterally estopped from seeking segregation of Titeflex's fees in this coverage action.[70]

## IV.   CONCLUSION AND ORDER

For the foregoing reasons, the Court concludes that the Fifth Circuit's decision in *Hollybrook Cottonseed Processing, L.L.C. v. Am. Guarantee & Liab. Ins. Co.*, 772 F.3d 1031 (5th Cir. 2014), does not affect the Court's previous conclusion that fees awarded under Section 82.002(g) of the Texas Civil Practice

---

(continued…)

offensive, as opposed to defensive, manner. *Compare Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329-31 (1979) (discussing concerns associated with offensive collateral estoppel that require courts have "broad discretion" in considering whether to apply offensive collateral estoppel), *Scurlock Oil Co. v. Smithwick*, 787 S.W.2d 560, 563 (Tex. App.—Corpus Christi 1990, no writ) (identifying four "fairness factors" outlined in *Parklane*) and *In re Plunk*, 481 F.3d 302, 308 (5th Cir. 2007) (citing *Scurlock Oil Co. v. Smithwick*, 787 S.W.2d 560, 563 (Tex. App.—Corpus Christi 1990, no writ) (noting courts have discretion in applying the four factors with respect to offensive collateral estoppel) *with Mann v. Old Republic Nat'l Title Ins. Co.*, 975 S.W.2d 347, 350 (Tex. App.—Houston [14th Dist.] 1998, no pet.) ("Defensive use of collateral estoppel does not trigger application of the *Parklane* factors") and *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 802 (Tex.1994) (declining to apply defensive collateral estoppel partly in a narrow holding that partly turned on the case's unusual procedural posture and relevant statutory changes).   Because of the unusual relationship between the insured and insurer in the State Court Litigation and the case at bar, it is unclear whether PSI's invocation of collateral estoppel should be deemed offensive or defensive collateral estoppel in the typical sense used by the courts.

[70]   The Fifth Circuit's affirmance in *Bay Rock* of the district court's conclusion that Mid-Continent was collaterally estopped from challenging the standing of a plaintiff in an underlying state action is not inconsistent with this conclusion. The Circuit in *Bay Rock* clarified that all prongs of collateral estoppel were satisfied because "the underlying state court action shows that the issue of [the first suit plaintiff's] insurer's subrogation right was fully litigated in that action … ."   *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 111 n.4 (5th Cir. 2010).

and Remedies Code are not "damages" covered by the commercial general liability Policy at issue.

The Court also holds that plaintiff Mid-Continent is not collaterally estopped from seeking segregation of Titeflex's fees attributable to defense against the PSI claims as opposed to the fees attributable to defense against the Head claim. The Amended Memorandum and Order is amended to this extent.

It is **SO ORDERED**.

SIGNED at Houston, Texas, this **30**th day of **December**, **2016**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE