United States District Court
Southern District of Texas
**ENTERED**
March 29, 2017
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MID-CONTINENT CASUALTY CO., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:09-0422 |
| | § | |
| PETROLEUM SOLUTIONS, INC., | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER
ON ENTRY OF FINAL JUDGMENT**

Before the Court is Defendant Petroleum Solutions, Inc.'s ("PSI") Motion for Entry of Final Judgment [Doc. # 183] ("Motion"), which Plaintiff Mid-Continent Casualty Company ("Mid-Continent") opposes [Doc. # 187] on several grounds. PSI has filed a reply [Doc. # 188]. The Motion is ripe for decision. The Court will enter a final judgment as described hereafter.

## I. BACKGROUND

***State Court Litigation.—*** In the 1990s, PSI sold to Bill Head and installed on his property a fuel storage system. It was discovered in 2001 that approximately 20,000 gallons of oil had leaked into the soil. Head notified PSI of the leak and accused PSI of violations of various duties including sale of a defective product. PSI reported the claim to its carrier, Mid-Continent, which agreed to defend PSI under a reservation of rights in connection with a commercial general liability policy in effect from May, 2001 to May, 2002, Policy No. 04-GL-000051591 (the "Policy").

Mid-Continent hired counsel to investigate the matter. PSI and counsel contended that a defective flex connector manufactured by Titeflex Corporation

("Titeflex") had been the cause of the leak.  Counsel took possession of the flex connector from the site and submitted it to a laboratory for testing and storage.  At some point, the flex connector was lost or destroyed.

Head filed suit in February, 2006, in state court, in Hidalgo County, Texas. Mid-Continent issued five additional reservation of rights letters during the state court litigation.

In the state court suit, Mid-Continent and PSI agreed to assert a third party contribution or indemnity claim against Titeflex, as the manufacturer of the allegedly defective component part in the fuel system giving rise to Head's property damage.  PSI filed that affirmative claim on October 5, 2006.  On January 30, 2007, Head asserted a similar claim against Titeflex.[1]

After PSI and Titeflex learned that the flex connector in issue had been destroyed or lost while in the expert's custody, Titeflex and Head asserted spoliation claims against PSI.

Head non-suited his claims against Titeflex in March, 2007.  In May, 2008, Titeflex asserted a counterclaim against PSI for certain of its own attorneys' fees, expenses, and costs (collectively, "fees").  Intending to eliminate the spoliation issue and simplify the trial of Head's claims, PSI non-suited without prejudice its claims against Titeflex in August, 2008.  Titeflex then clarified that it would not dismiss its counterclaim for fees unless PSI dismissed its affirmative contribution/indemnity claims against Titeflex *with* prejudice.  PSI refused.  In September, 2008, Titeflex broadened its counterclaim to seek all fees from PSI that

---

[1] *See* Exh. A24 to Mid-Continent Motion, Plaintiff's First Amended Original Petition, *Bill Head v. Petroleum Sols., Inc.*, Cause No. C-416-06-I (398th Dist. Ct., Hidalgo County, Tex. Jan. 30, 2007) [Doc. # 68-28], at 3–4, ¶¶ 9–14.

it incurred in the Head/PSI litigation, relying on Texas Civil Practice and Remedies Code § 82.002 ("§ 82.002").

Head's products liability claim and Titeflex's fee claim against PSI were tried to a jury over approximately eight weeks in Hidalgo County, Texas, in or about September, October, and November, 2008. The jury rendered verdicts against PSI exceeding $1.2 million in favor of Head and $463,000 on Titeflex's § 82.002 claim. The state court entered judgment on both aspects of the verdict in January, 2009. PSI appealed.

On December 19, 2014, the Texas Supreme Court affirmed the Titeflex judgment against PSI.[2] The Supreme Court vacated the judgment in Head's favor and remanded for a new trial.

Mid-Continent formally denied coverage under the Policy with respect to the Titeflex judgment, but continued to defend PSI against Head's claims, asserting reservations of rights. In February, 2015, upon demand, PSI paid the Titeflex judgment in full, which by that time totaled, with interest, almost $620,000.

***Commencement of Federal Litigation.***— Mid-Continent commenced this federal action in February, 2009, seeking a declaration that Mid-Continent does not owe PSI any indemnity for PSI's payment of the Titeflex judgment. This case was stayed pending completion of all appeals of the verdict in state court. Upon notification that the Texas Supreme Court had ruled in the state court litigation, the Court reopened this declaratory judgment case.

PSI then counterclaimed for breach of the Policy terms, complaining that Mid-Continent had failed to cover PSI's payment of the Titeflex judgment.[3] PSI

---

[2]    The Supreme Court issued its first opinion in July, 2014, but altered it on rehearing.

[3]    PSI's Counterclaim [Doc. # 51], at 10, for breach of contract states:

(continued…)

alleged Mid-Continent had violated Texas Insurance Code § 541.060(a)(4), and sought damages equaling the total sum PSI paid Titeflex on the judgment as well as PSI's own attorneys' fees under Texas Civil Practice and Remedies Code § 38.001.  This extended coverage litigation followed.

In light of this Court's rulings on summary judgment, PSI presently seeks entry of final judgment awarding it damages for Mid-Continent's breach of the Policy for a "total recovery of $187,604.17," an amount to which the parties stipulated as "damages" in the Joint Pretrial Order [Doc. # 126] ("Joint PTO"), plus pre- and post-judgment interest.[4]  Mid-Continent contends that the Joint PTO stipulation has been misinterpreted by PSI and there remains another question for the Court to decide, namely, what portion of the reduced sum stipulated by the parties on the collateral estoppel issue is covered under the Policy as interpreted by the Court.[5]

The Court assumes familiarity with its prior rulings, and describes these federal proceedings only to the extent pertinent to the pending issues raised by Mid-Continent pertaining to entry of the final judgment requested by PSI.

***Proceedings in This Federal Litigation Pertaining to the Amount of***

---

(continued…)

>67.  Mid-Continent breached its insurance contract by failing to indemnify PSI for the judgment against PSI in favor of Titeflex in the Underlying Lawsuit. In particular, the [sic] Titeflex's claims and subsequent judgment fall within the coverage afforded by the Policy and no exclusions apply to negate coverage. In addition, all conditions in the Policy either were satisfied or were waived by Mid-Continent.

[4]   PSI also seeks costs and expenses under 28 U.S.C. § 1920.  Those are not in issue here.

[5]   Mid-Continent contends primarily that none of the $187,604.17 is covered by the Policy.

4

***Damages to PSI Covered by the Policy.***— After close of discovery, the parties filed motions for summary judgment on numerous issues surrounding Policy defenses asserted by Mid-Continent.  The Court decided as a matter of law most of the issues presented in an 82-page opinion.  *See* Memorandum and Order [Doc. # 93], dated July 29, 2016.   The Court's rulings generated motions for reconsideration seeking clarifications and alterations of conclusions in the Memorandum and Order.  The Court carefully considered each of the parties' points and, on September 29, 2016, issued a 97-page Amended Memorandum and Order [Doc. # 109] ("Amended M&O").  Ultimately, the Court held that Mid-Continent breached the Policy by not paying indemnity covering certain of the Titeflex fees that PSI claimed were its covered losses, but held that there was a threshold issue of fact whether PSI had satisfied a condition precedent that it cooperate in the investigation and settlement of the claims against PSI, including whether PSI cooperated when it refused to dismiss with prejudice its affirmative claim against Titeflex for indemnity.[6]  The Court also concluded that there were other issues of fact arising from the Court's interpretation of the Policy coverage language and its determination that Policy coverage extended only to Titeflex's fees, expenses and costs (*i.e.*, fees) incurred in connection with defending against Head's claims, and did not include fees incurred solely in defense of PSI's

---

[6]    As explained in the Amended Memorandum and Order ("Amended M&O") [Doc. # 109] and at trial on the cooperation issue, there was a question whether the indemnity claim in fact had financial value to PSI given that the flex connector had been lost or destroyed.  PSI contended that the claim against Titeflex had value and was important as PSI's only avenue for potential recovery if Head succeeded on his products claim against PSI and Mid-Continent ultimately denied coverage.

affirmative claims.[7]  Specifically, the Court identified the following fact issues: (1) whether, for purposes of this coverage case, there was a waiver by counsel for PSI in the state court litigation (hired and paid for by Mid-Continent) of the issue of segregation, or allocation, of Titeflex's fees attributable, respectively, to PSI or to Head's claims against Titeflex, and (2) if waiver occurred, whether it collaterally estopped Mid-Continent from objecting to Policy coverage in this coverage action for sums PSI paid attributable to Titeflex's fees incurred solely in connection with defending against PSI's affirmative claims.[8]  The parties disagreed about what work should be included and the Court held the issue had to be resolved at trial because these sums were not ascertainable from the record.[9]

*Pretrial Proceedings.—* To address the issue of segregation, among other open issues, Mid-Continent submitted on October 17, 2016, a joint report from the

---

[7]     As the Court noted in the Amended M&O, the record indicated that all or a majority of the attorneys' fees Titeflex incurred in defending against Head's claims were for services inextricably intertwined with its defense against PSI's affirmative claims.  *See* Amended M&O [Doc. # 109], at 77.  The Court held that to the extent Titeflex incurred fees or expenses for work defending against Head's claims, which work was also helpful in countering PSI's claims, such sums were recoverable under the Policy.  *See id.* at 78.

[8]     The Court held:

> To the extent fees were incurred solely in defense of PSI's Affirmative Claim, which claim was brought under Section 82.002 for indemnity and was not a product liability claim, the award to Titeflex was not "damages" under the Policy "because of" "property damage" to Head's land**.  *The parties may present testimony at trial regarding the purpose of specific challenged fees and costs incurred by Titeflex.***  It is noted that if the Court finds Mid-Continent waived the segregation issue under Section 82.002(a) for purposes of this coverage action, then this factual inquiry is moot.

Amended M&O [Doc. # 109], at 78 (emphasis added).

[9]     *See id.* at 29 n.108.

6

parties to the Court in light of the issues remaining after Amended M&O.   The
Report states in pertinent part:

> In its Amended Memorandum and Order ("Order") [Doc. #109], the
> Court ordered the parties to submit briefing on Texas law of collateral
> estoppel. ***The parties are diligently working on stipulations of fact
> such that the Court can rule on the collateral estoppel issue as a
> matter of law***.  If the parties reach stipulations, the collateral estoppel
> briefing can be submitted to the court within 15 days. ***If the parties
> cannot reach stipulations, then it may require the re-opening of
> discovery.***
>
> *   *   *   *
>
> ***The parties will agree to stipulate to the amount of Titeflex's
> attorney's fees, and applicable post-judgment interest, for the period
> when Titeflex was defending Head's claim*** and, if Collateral Estoppel
> applies, for the period when PSI's claim was pending against Titeflex.
> ***These stipulations will negate any jury issue regarding damages***
> (other than attorneys' fees for the prevailing party).[10]

Mid-Continent contends the parties merely planned to agree "to the amount
of Titeflex's damages," not the damages to which PSI is entitled to recover if it did
or did not prevail on the collateral estoppel issue.[11]   Shortly thereafter, the parties
reported they reached agreement on the collateral estoppel issue and submitted
briefing on the subject in early and mid- November.  *See* Docs. ## 118, 119, 122,
123.  The Court took the matter under advisement.

On November 30, 2016, the parties submitted their Joint PTO in which they
stated:

31.   The Parties have stipulated to ***damages*** as follows:

---

[10]   Report to the Court [Doc. # 112], filed October 17, 2016, at 1-2.

[11]   Mid-Continent Response to PSI's Motion for Entry of Final Judgment ("Mid-Continent Response") [Doc. # 187], at 5.

a.     If the Court determines collateral estoppel does not apply, and ***PSI only gets the period*** that Judge Atlas identified in the Amended Opinion and Order, the Parties have agreed that the ***damages*** are $136,499.97 plus $51,104.40 in post-judgment interest, for a total ***recovery*** of $187,604.17.

b.     Alternatively, if the Court determines collateral estoppel applies, the parties have agreed that the ***damages*** are $278,545.36 plus $104,285.11 in post-judgment interest, for a total ***recovery*** of $382,830.47.

c.     These are exclusive of attorneys' fees in this case, and any pre-judgment interest that would apply to the present claim.

Joint PTO [Doc. # 126], at 6-7 (emphasis added).  There was no reservation of, or statement that there remained any issue on, segregation of Titeflex's fees or damages sought by PSI under the Policy.

In the Joint PTO, the parties submitted proposed jury questions and instructions focused on two areas: (1) the duty to cooperate under the Policy and (2) whether Mid-Continent had waived its right to contest PSI's compliance with the cooperation clause (collectively, the "cooperation issues").[12]  The only mention of damages or PSI's recovery in the Joint PTO was in the parties' stipulation in ¶ 31, quoted above.  The Joint PTO also contained no contested issues on damages.

---

[12]     PSI gave Mid-Continent and the Court notice that the waiver question was in issue, because PSI had submitted a proposed jury question and instructions on the issue.  At the initial docket call held on December 7, 2016, PSI argued, contrary to the Court's holding in the Amended M&O, that there was a fact issue whether Mid-Continent had waived its right in state court to enforce the Policy's "Cooperation Clause."  Mid-Continent strenuously disagreed.  The Court permitted expedited additional briefing.  On December 16, 2016, the Court ruled that the waiver issue, in addition to the duty to cooperate issue, would be tried on January 4, 2017.  *See* Memorandum and Order on Waiver of Enforcement and Applicable Standard for Breach of the Duty to Cooperate [Doc. # 141], entered December 16, 2016 ("Dec. 16 M&O").  The Court also determined the precise jury questions and instructions to be presented at trial on these issues.

On December 7, 2016, the Court held docket call, at which the Court ruled on *limine* matters and objections to exhibits.  The Court stated it had not made a definitive decision, but was likely to deny collateral estoppel.  *See* Hearing Transcript, Dec. 7, 2016 [Doc. # 148], at 79.  Although the December 7 hearing record is not totally clear because multiple legal issues were being discussed simultaneously, the Court understood PSI's position to be that the collateral estoppel issue pertained to whether Mid-Continent would be permitted to limit PSI's recovery to an amount equal to the Titeflex fees incurred in defense of Head's claim against Titeflex or equal to a greater sum, specifically, the amount Titeflex incurred throughout the pendency of PSI's claim against Titeflex in the state court litigation.  *Id*. at 80, 83-86.  The Court then sought clarification on the dollars in dispute.  *See id.* at 83.  PSI's counsel stated:

> And we've stipulated actually to the amount. We've stipulated to the difference. If the Court rules that they're collaterally estopped from that period, in the Joint Pretrial we've told the Court what those amounts are so that we wouldn't have to get into fights with the jury . . . and stuff like that. So those amounts are fixed for purposes of agreement.

*See id*. at 85.  PSI's counsel confirmed that "[t]he issue that [PSI was] raising is the difference between the fees related to [the] Head defense versus Titeflex's fees relating to the entire period that PSI sued Titeflex."  *Id*. at 86.

Mid-Continent did not disagree with this explanation.  Nor did Mid-Continent seek at that hearing, or thereafter, to add additional jury instructions or jury questions concerning the amount PSI could recover from Mid-Continent if Mid-Continent prevailed on the collateral estoppel question and PSI prevailed on the cooperation issues.  Nor did Mid-Continent mention that there were additional legal issues to be addressed after trial concerning PSI's right to recover damages for sums it paid Titeflex on the state court judgment.  In light of the stipulation in

9

the Joint PTO, the list of contested issues, and Mid-Continent's conduct at the December 7 docket call, Mid-Continent concurred implicitly that there remained no further issues for decision on the merits of the parties' claims once the Court made the collateral estoppel ruling and the jury decided the cooperation issues.[13]

The Court held another lengthy docket call on December 23, 2016, at which it ruled on numerous additional objections to exhibits and witnesses, and made other evidentiary rulings.[14]  The Court warned the parties that "collateral estoppel is probably not going to apply."  Hearing Transcript, Dec. 23, 2016 [Doc. # 184], at 125.  The Court noted that the parties had not requested that the collateral estoppel issue be decided before trial but the Court nevertheless would try to do so. *Id*.  Again, Mid-Continent did not submit for trial any jury instructions or questions on damages or segregation issues, and did not in any other manner indicate the need for any decision on the amount of damages due to PSI.

On December 30, 2016, the Court ruled "plaintiff Mid-Continent is not collaterally estopped from seeking segregation of Titeflex's fees attributable to defense against the PSI claims as opposed to the fees attributable to defense against the Head claim[,]" and amended the Amended M&O accordingly.  *See* Memorandum and Order, entered December 30, 2016 ("December 30 M&O") [Doc. # 154], at 29.

On January 3, 2017, the day before jury selection and trial, the Court held an "emergency hearing" at the parties' request.   For the first time in connection with trial proceedings or remaining issues for decision, Mid-Continent stated that it

---

[13]     The Court notes that both PSI and Mid-Continent disagree with certain aspects of the summary judgment rulings in the Amended M&O [Doc. # 109], but those issues are not presently before the Court.

[14]     *See* Hearing Transcript, Dec. 23, 2016 [Doc. # 184].

sought to contest aspects of the sums PSI paid to Titeflex other than what had been previously argued. Mid-Continent, citing the December 30 M&O, contended that PSI must adduce evidence regarding what damages PSI incurred, prior to this Court's entry of final judgment in this coverage case. *See* Hearing Transcript, Jan. 3, 2017 [Doc. # 185], at 8-9, 11. Relying on the parties' stipulation in the Joint PTO, as well as other matters of record, the Court rejected Mid-Continent's argument that there was an issue for trial on damages suffered by PSI. The Court held there would be no trial on how many dollars were due to PSI arising from Titeflex fee segregation issues. *Id*. at 9-13. The Court ruled that the parties' stipulation meant that if collateral estoppel did not apply, PSI recovered fewer dollars under the Amended M&O than if collateral estoppel did apply, and the parties had agreed to two scenarios to which they were bound. *Id*. The Court clarified that the last paragraph of its December 30 M&O was not intended to convey that Mid-Continent was permitted, after the Joint PTO stipulation, to raise segregation issues to seek further reduction of PSI's recovery for amounts paid to Titeflex. The Court held that Mid-Continent was bound to the Joint PTO's stipulated proposed findings in ¶ 31 and the proposed special interrogatories for the jury. *See id*. at 12-13.

The duty to cooperate and waiver issues were tried to a jury from January 4 through 6, 2017.[15] The jury decided both issues in favor of PSI.

---

[15]    The jury answered the following questions in the affirmative:

> Question 1:  Do you find that PSI has proved by a preponderance of the evidence that it complied with the Policy's cooperation clause with respect to the Titeflex offer proposed in 2008?

> Question 2:  Did PSI prove by a preponderance of the evidence that Mid-Continent waived its right to enforce the Policy's cooperation clause?

(continued…)

At trial on the coverage and waiver issues, Mid-Continent moved for judgment as a matter of law on PSI's failure to present evidence of damages.[16]  The Court denied the motion[17] in light of the parties' express stipulation in the JPTO and the jury questions that the parties presented.

## II.   DISCUSSION

Mid-Continent continues to press its position that it is entitled further to test its interpretation of the "segregation" issue regarding the amount of PSI's damages.  Mid-Continent also objects to July 30, 2014, as PSI's proposed accrual date for pre-judgment interest, and to PSI's method of calculation of the daily amount of that interest.  The parties agree, however, that post-judgment interest at the current federal rate should be included in the final judgment.

### A.    Amount of Damages

PSI contends that the amount of damages to which it is entitled under the Court's rulings is $187,604.17.   Mid-Continent opposes an award of any damages.  The Court holds, for reasons set forth below, that the parties' stipulation in the Joint PTO, ¶ 31, and the rest of that Joint PTO, are clear and binding on Mid-Continent.[18]  Mid-Continent's arguments that it may further challenge the sum to which PSI is entitled to recover in this action are unpersuasive.

As the detailed chronology set forth above establishes, Mid-Continent

---

(continued…)
Verdict Form [Doc. # 169], at 2-3.

[16]    *See* Hearing Minutes and Order [Doc. # 164], Jan. 6, 2017; Mid-Continent Response [Doc. # 187], at 5.

[17]    Hearing Minutes and Order [Doc. # 164], Jan. 6, 2017.

[18]    *See* quote of Stipulation at pp. 7-8, *supra*.

waived in the Joint PTO its right to a trial or otherwise to challenge further the amount of PSI's recovery to lower it below the stipulated amount of $187,604.17. "It is a well-settled ruled that a joint pretrial order signed by both parties supersedes all pleadings and governs the issues and evidence to be presented at trial." *See Kona Tech. Corp. v. S. Pac. Transp. Co*, 225 F.3d 595, 604 (5th Cir. 2000) (quoting *McGehee v. Certainteed Corp.,* 101 F.3d 1078, 1080 (5th Cir. 1996)). "The pretrial order controls the scope and course of the trial, Fed. R. Civ. P. 16, and a party waives an issue not included the order[.]" *Matter of Pirani*, 824 F.3d 483, 493 n.1 (5th Cir. 2016) (citing *Kona Tech.*, 225 F.3d at 604). Mid-Continent is bound by its stipulation to damages in ¶ 31 of the Joint PTO. Futher, Mid-Continent is limited by the scope of issues it presented in the Joint PTO. *See Rockwell Intern. Corp. v. U.S.*, 549 U.S. 457, 474 (2007) ("claims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint and, conversely, the inclusion of a claim in the pretrial order is deemed to amend any previous pleadings which did not include that claim") (quoting *Wilson v. Muckala,* 303 F.3d 1207, 1215 (10th Cir. 2002)).[19]

The Joint PTO stipulation is plain. The parties agreed that PSI may "recover" specified sums as "damages" depending on whether the Court held that Mid-Continent was or was not collaterally estopped from challenging the total fees incurred by Titeflex. The parties in the Joint PTO stated that they had "stipulated to damages." Joint PTO [Doc. # 126], at 6 ¶ 31. The stipulation refers to "total recovery" of $187,604.17 *or* $382,830.47, depending on the Court's ruling on the collateral estoppel issue. The stipulation's phrasing could have no other meaning

---

[19]     Certain of the grounds for the Supreme Court's decision in *Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007), none of which are relevant here, are in doubt following Congress's 2010 amendment to the False Claims Act, 31 U.S.C. § 3729.

than to cover the amount to which PSI would be entitled under the Court's many rulings.

Further reinforcing this outcome is the fact that Mid-Continent supplied in the Joint PTO no proposed jury instructions, no jury questions, and no contested issues regarding how to calculate PSI's damages in the event the Court determined collateral estoppel did not apply.  The burden was on Mid-Continent to raise the segregation issue with specificity in the Joint PTO.  Mid-Continent did not do so.  Nor did it give any indication that this issue was contested at either the two extensive docket calls at which hours of extensive rulings were made by the Court in order to ready this case for trial.[20]  Nor did Mid-Continent request the Court make the ruling on collateral estoppel before trial in order to pursue the issue before the jury or the Court.

Last, it is unclear if Mid-Continent seeks a bench trial or a ruling by motion on a written record.  Mid-Continent still has not explicitly made such a request, other than orally, in a general manner, on the day before the January trial.  Nor has Mid-Continent explained the specific grounds for its position that the Court deny PSI all recovery.[21]

In sum, Mid-Continent is bound to the language of its stipulation in ¶ 31 of the Joint PTO.  The afternoon before jury selection and trial was simply too late for Mid-Continent to introduce new issues or to seek additional rulings on matters that

---

[20]    In contrast, PSI submitted in the Joint PTO a proposed jury question and instructions on the waiver issue, and raised the issue at the Docket Call.  *See supra* note 12.

[21]    Mid-Continent contends PSI is not entitled to recover any of the funds it paid to Titeflex on the state court judgment or, alternatively, that PSI is entitled to recover only a $227.50 filing fee.  *See* Mid-Continent Response [Doc. # 187], at 10.  To the extent Mid-Continent relies on earlier arguments made on summary judgment, the issues have already been addressed.

had been the subject of a stipulation.[22]  Mid-Continent's objection to the amount of damages to which PSI is entitled is overruled.  The objection has been waived by the Joint PTO stipulation and proceedings.

### B.   Pre-Judgment Interest

The parties agree that the applicable pre-judgment interest rate is 5% per annum, pursuant to Texas Finance Code Section 304.003(b).  Mid-Continent raises two issues concerning PSI's proposed calculations.  Mid-Continent first contests PSI's originally proposed commencement date for this interest,[23] contending interest should not begin until February 27, 2015, the date PSI paid Titeflex the state court judgment in full.  PSI now concurs on this point.  *See* PSI Reply [Doc. # 188], at 1.

Mid-Continent also contests PSI's calculation of the daily rate on pre-judgment interest.  PSI suggests the daily rate on 5% per annum be calculated on a 365 day year, as is common, and urges the daily rate is $25.70 on the $187,604.17 damages award.[24]  Mid-Continent proposes instead to divide the annual interest rate by 365.2422 days, as the "true length of a year on Earth," which equals a daily

---

[22]   Mid-Continent contends the Court's reference at the second docket call to judicial estoppel is incorrect.  The Court withdraws that reference.  There is no need to rely on judicial estoppel.  Rather, the Court simply exercises its discretion to enforce the plain language of the stipulation presented to the Court.

[23]   PSI requested July 30, 2014, as the date of accrual.

[24]   *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, CIV.A. 5:02-CV-101-C, 2003 WL 21662829, at *4 (N.D. Tex. July 15, 2003) (calculating prejudgment interest on a daily basis), *aff'd in part, rev'd in part and remanded*, 382 F.3d 546 (5th Cir. 2004); *see also Centerpoint Energy Inc. v. Associated Elec. & Gas Ins. Services Ltd.*, CV 09-2107, 2011 WL 13134771, at *1 (S.D. Tex. May 17, 2011).  PSI thus makes the following calculation: $187,604.17 (amount of damages recovery) x 0.05 (interest rate per year) equals $9,380.21 per year, which it contends should be divided by 365 (days in a year), for a daily pre-judgment interest of $25.70 a day.

15

interest rate of $25.68, a $0.02 per day difference from PSI's calculaton.[25]  PSI, in the spirit of cooperation, agrees to use Mid-Continent's figure.  Thus, the Court uses $25.68 as the prejudgment interest daily rate, commencing February 27, 2015, until the date of entry of final judgment.   There have been 761 days since February 27, 2015.  Accordingly, the prejudgment interest on the damages awarded to PSI totals $19,542.48.

### C.    Post-Judgment Interest

PSI requests post-judgment interest at the federal rate from the date of entry of final judgment by this Court.  Mid-Continent does not contest PSI's request or cited authorities.

Federal law governs the award of post-judgment interest.  *See Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d  161, 173 (5th Cir. 2010).  It is typically awarded from the date of entry of the judgment, "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [ ] the date of the judgment."  *See* 28 U.S.C. § 1961(a).  Interest is calculated daily and compounded annually.  *Id.*, § 1961(b).[26]

---

[25]    Mid-Continent Response [Doc. # 187], at 8 (citing EVAN M. MANNING, CAL. INST. TECH., HOW MANY DAYS ARE IN A YEAR? (1997), *reprinted in* THE PUMAS COLLECTION, https://pumas.nasa.gov/files/04_21_97_1.pdf (last visited March 23, 2017).

[26]    The Fifth Circuit has determined also that attorneys' fees accrue post-judgment interest.  *See Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542, 544 (5th Cir. 1983) (en banc), *overruled in part on other grounds by J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 790 F.2d 1193, 1195 (5th Cir. 1986).

Post-judgment interest accrues on the prejudgment interest.  *See Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1280 (5th Cir. 1991).  The applicable current rate for post-judgment interest on PSI's recovery is 1.0% per annum.[27]

### III.   <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, it is hereby

**ORDERED** that Defendant Petroleum Solutions, Inc.'s Motion for Entry of Final Judgment [Doc. # 183] is **GRANTED** in accordance with this Memorandum and Order.

Final judgment in accordance with this Memorandum and Order will be entered separately.

SIGNED at Houston, Texas, this **<u>29th</u>** day of **March, 2017.**

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

---

[27]   *See   http://www.txs.uscourts.gov/page/post-judgment-interest-rates*  (last visited March 27, 2017) (identifying post-judgment interest rate for judgments entered from March 27, 2017 through April 2, 2017).