IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | | |
|---|---|---|---|
| MID-CONTINENT CASUALTY CO. | § | | |
| | § | | |
| v. | § | CIVIL ACTION NO. 4:09-0422 | |
| | § | | |
| PETROLEUM SOLUTIONS, INC. | § | | |

# REVISED MEMORANDUM AND ORDER ON RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL

Pending before the Court in this insurance coverage case is Plaintiff Mid-Continent Casualty Company's ("Mid-Continent") "Renewed Motion for Judgment as a Matter of Law and Motion for New Trial" [Doc. # 193] (collectively, the "Motion"), in which Mid-Continent requests the Court withdraw the Final Judgment signed March 29, 2017 [Doc. # 190] and alter the reasoning in the Memorandum and Order on Entry of Final Judgment [Doc. # 189]. Defendant/Counter-Plaintiff Petroleum Solutions, Inc. ("PSI") opposes the Motion on numerous grounds. *See* PSI Response [Doc. # 195]. The Motion is ripe for decision. Having carefully considered the parties' arguments, the entire record in this case, and the applicable law, the Court **denies** Mid-Continent's Motion.

## I. BACKGROUND

This declaratory judgment action was originally filed by Mid-Continent in

2009, after an adverse verdict was rendered against PSI in state court. Mid-Continent seeks a declaration regarding the non-existence or scope of indemnity due to PSI, the insured under a commercial general liability policy issued by Mid-Continent for the period May 1, 2001 to May 1, 2002 (the "Policy"). Because of pendency of state court appeals, the Court stayed and administratively closed this case. The Court reactivated the case by agreement in 2015.

The parties have disputed many issues throughout this case. The Court has made extensive written rulings,[1] which are incorporated by reference. The Court assumes the reader's familiarity with all prior proceedings in this case, and describes in this Memorandum only factual and procedural matters necessary to an understanding of the matters raised in Mid-Continent's Motion.

The Court ruled as a matter of law on most of the questions raised by the parties in cross-motions for summary judgment,[2] but held that there were certain

---

[1]  *See, e.g.*, Memorandum and Order, 2016 WL 4061147 (S.D. Tex. July 29, 2016) ("Orig. M&O") [Doc. # 93]; Amended Memorandum and Order ("Amended M&O"), 2016 WL 5539895 (S.D. Tex. Sept. 29, 2016) [Doc. # 109]. The Court refers to the page numbers of the Amended M&O as they appear in the opinion filed in the Court's docket. *See infra* nn. 2, 3.

[2]  *See* Amended M&O [Doc. # 109]; *see also* factual summaries of the underlying state court litigation ("State Court Litigation") in the Memorandum and Order dated December 30, 2016 ("Dec. 2016 M&O") [Doc. # 154] (addressing the application of *Hollybrook Cottonseed Processing, L.L.C. v. American Guarantee & Liability Insurance Co.*, 772 F.3d 1031 (5th Cir. 2014), and analyzing whether collateral estoppel prevented Mid-Continent from contesting an issue of coverage
(continued…)

triable questions of fact. Two of those were decided in a three-day jury trial held in January, 2017.[3]

Mid-Continent raises four issues in the Motion:[4] (1) whether there is legally and factually sufficient evidence that Mid-Continent waived its right to rely upon a condition precedent in the Policy that PSI cooperate in the investigation and settlement of claims against it (the "cooperation clause")[5] when, during pretrial proceedings in the underlying Hidalgo County, Texas, products liability suit filed by Bill Head for damage to his real property ("State Court Litigation"), PSI refused to dismiss with prejudice its affirmative claim for indemnity against third-party

---

(continued…)
under the Policy), and Memorandum and Order on Entry of Final Judgment ("M&O on Final Jmt") [Doc. # 189].

[3] *See* Orig. M&O [Doc. # 93]; Amended M&O [Doc. # 109]; Memorandum and Order on Waiver of Enforcement and Applicable Standard for Breach of the Duty to Cooperate ("M&O on Waiver & Coop.") [Doc. # 141]; Dec. 2016 M&O [Doc. # 154]; Memorandum and Order on Motion for Implied Amendment [Doc. # 173]; M&O on Final Jmt [Doc. # 189].

[4] *See* Mid-Continent Motion [Doc. # 193], at 1.

[5] The "cooperation clause" in the Policy states in pertinent part:

> c. You and any other involved insured must:
> \* \* \* \*
> (3) Cooperate with us in the investigation or settlement of the claim or defense against the 'suit'[.]

Mid-Continent Policy No. 04-GL-00051591 [Doc. # 63-2], at CGL Form page 9 (ECF page 22), § IV(2)(c)(3).

defendant Titeflex Corporation ("Titeflex") at the time Titeflex offered to dismiss with prejudice its own claim for attorneys' fees and expenses against PSI;[6] (2) whether Mid-Continent waived the right to a court or jury determination of the amount of fees, expenses, and costs (collectively, "fees") that were covered under the Policy in light of Mid-Continent's stipulation and other submissions (or lack thereof) in the parties' Joint Pretrial Order ("PTO") [Doc. # 126];[7] (3) the Court's instructions to the jury on the legal definitions of "cooperation" and "waiver";[8] and (4) whether the jury's answers at trial were against the great weight and preponderance of the evidence.[9]

## II. JUDGMENT AS A MATTER OF LAW

At trial on the coverage and waiver issues, Mid-Continent moved pursuant to Federal Rule of Civil Procedure 50(a) for judgment as a matter of law on PSI's failure to present evidence of damages.[10] The Court orally denied the motion.[11]

---

[6] *See* Amended M&O [Doc. # 109], at 30; M&O on Waiver & Coop. [Doc. # 141], at 7. *See infra* Sections II.B, III.B.1, & III.B.2.

[7] *See, e.g.,* Dec. 2016 M&O [Doc. # 154]; M&O on Final Jmt [Doc. # 189]. *See infra* Section II.C.

[8] *See* Verdict Form [Doc. # 169], at 2-3. *See infra* Section III.B.

[9] *See infra* Section III.C.

[10] *See* Hearing Minutes and Order [Doc. # 164], Jan. 6, 2017; Mid-Continent Response to PSI Motion for Entry of Final Judgment [Doc. # 187], at 5.

[11] Hearing Minutes and Order [Doc. # 164], Jan. 6, 2017.

4

Mid-Continent now seeks judgment as a matter of law, contending there is: (1) no evidence it waived its right to rely upon the Policy's cooperation clause and (2) no evidence segregating the amount of Titeflex's attorneys' fees between fees covered and not covered as damages under the Policy.

Mid-Continent rehashes old arguments. The Court addressed these matters in multiple written rulings and orally on the record in connection with trial. The Court accordingly addresses these issues only briefly after setting forth the applicable legal standard.

### A. Legal Standard for Judgment as a Matter of Law

Under Federal Rule of Civil Procedure 50, a motion for judgment as a matter of law may be granted if a trial court finds that a "reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[.]" FED. R. CIV. P. 50(a). A motion for judgment as a matter of law "is properly granted if the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable jurors could not have arrived at a contrary verdict." *See Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 395 (5th Cir. 2013) (citing *Poliner v. Tex. Health Sys.,* 537 F.3d 368, 376 (5th Cir. 2008)). In evaluating such a motion, "'the court must review all of the evidence in the record, draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh the evidence.'" *See Poliner*,

5

537 F.3d at 376 (quoting *Ellis v. Weasler Eng'g, Inc.*, 258 F.3d 326, 337 (5th Cir. 2001)).

If a court denies a motion for judgment as a matter of law following the close of evidence, the party may renew its motion within twenty-eight days of the entry of judgment. FED. R. CIV. P. 50(b).

### B. Mid-Continent's Waiver of Right to Enforce the Policy's Cooperation Clause

Mid-Continent argues that is entitled to judgment as a matter of law because there is insufficient evidence from which the jury could reasonably conclude Mid-Continent waived its right to enforce the Policy's cooperation clause. In support, Mid-Continent points to its reservation of rights letters sent to PSI during the State Court Litigation. Mid-Continent's arguments are unavailing.

As an initial matter, it is noted that the jury found that PSI complied with the Policy's cooperation clause with respect to the Titeflex offer proposed in 2008. *See* Verdict Form [Doc. # 169], Question 1, at 2; *see also infra* Section III. Thus, the issue of whether Mid-Continent waived its right under the Policy to enforce the cooperation clause is moot. The Court addresses this waiver issue in an abundance of caution, however, in the event Mid-Continent prevails on its position that the Court erred in its instruction to the jury on the standard for cooperation.

As discussed in the Court's Memorandum and Order on Waiver of Enforcement and Applicable Standard for Breach of the Duty to Cooperate [Doc.

6

# 141], the Court ultimately concluded, contrary to Mid-Continent's arguments, that there was a fact issue regarding Mid-Continent's potential waiver of enforcement of the cooperation clause.[12] Additionally, as detailed below in connection with the propriety of the Court's jury charge, *see infra* Section III.B.2, PSI presented evidence at trial sufficient to legally support a finding that Mid-Continent waived its right to enforce the cooperation clause. For example, but without limitation, Mid-Continent did not reference PSI's failure to accept Titeflex's pretrial settlement demand when citing the cooperation clause in reservation of rights letters prior to or reasonably after trial in the State Court Litigation. PSI also presented testimony of Mid-Continent's representative acknowledging it would have been appropriate to specify the settlement issue in these letters. There also was clear evidence that Mid-Continent was closely involved in key strategy decisions by PSI's trial and appellate counsel (each of which were chosen by Mid-Continent) in the State Court Litigation.

The Court concludes, based upon the evidence presented at trial, that there was sufficient evidence to support the jury's determination that Mid-Continent had, in fact, impliedly waived the right to refuse enforcement of the Policy based on the

---

[12] *See Addicks Svs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 298 (5th Cir. 2010) (quoting *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (per curiam)); *id.* at 299 ("Waiver is ordinarily a question of fact.").

7

cooperation clause in connection with PSI's refusal to abandon its affirmative claim against Titeflex. Mid-Continent's argument to the contrary is rejected.[13]

### C. Mid-Continent's Waiver of Jury Trial and Additional Rulings on Segregation of Damages Issue

The Court held the Policy required indemnity for fees PSI was required to pay to Titeflex under subsection (a) of Texas Civil Practice and Remedies Code § 82.002 ("§ 82.002"), the amount Titeflex incurred in defense of Bill Head's claim in the State Court Litigation,[14] but not damages for Titeflex's fees paid by PSI under § 82.002(g) that Titeflex incurred in prosecuting its claim for indemnity against PSI.[15] The State Court Litigation did not result in a finding that segregated

---

[13] Mid-Continent also argues that, even if evidence supported the position that Mid-Continent waived its right to rely upon the Policy's cooperation clause, the waiver doctrine cannot expand an insurance policy's coverage. It is not necessary to reach this issue because the jury determined that PSI satisfied its cooperation obligation.

[14] Section 82.002(a) provides: "A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action except for [circumstances not here relevant]." *See also* Dec. 2016 M&O [Doc. # 154], at 6 n.8. "Products liability action" is defined in Section 82.001(b) to "mean[] any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories."

[15] Section 82.002(g) provides: "A seller is entitled to recover from the manufacturer court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages incurred by the seller to enforce the seller's right to indemnification under this section."

8

Titeflex's fees attributable to § 82.002(a) from fees arising from § 82.002(g).[16] The Court instructed the parties to brief the impact of this circumstance. Instead, on November 30, 2016, the parties submitted their Joint PTO in which they stated:

> 31.  The Parties have stipulated to ***damages*** as follows:
>
> a. If the Court determines collateral estoppel does not apply, and PSI only gets the period that Judge Atlas identified in the Amended Opinion and Order, the Parties have agreed that the ***damages*** are $136,499.97 plus $51,104.40 in post-judgment interest, ***for a total recovery of*** $187,604.17.
>
> b. Alternatively, if the Court determines collateral estoppel applies, the parties have agreed that the ***damages*** are $278,545.36 plus $104,285.11 in post-judgment interest, ***for a total recovery of*** $382,830.47.
>
> c. These are exclusive of attorneys' fees in this case, and any pre-judgment interest that would apply to the present claim.[17]

---

[16] *See, e.g.,* Amended M&O [Doc. # 109], at 22-24; Dec. 2016 M&O [Doc. # 154], at 21-22.

[17] Joint Pretrial Order [Doc. # 126], at 6-7 (emphasis added).

Mid-Continent points to a joint statement by the parties filed October 17, 2016, advising the Court, in pertinent part, as follows:

> The parties will agree to stipulate to the amount of Titeflex's attorney's fees, and applicable post-judgment interest, for the period when Titeflex was defending Head's claim and, if Collateral Estoppel applies, for the period when PSI's claim was pending against Titeflex. These stipulations will negate any jury issue regarding damages (other than attorneys' fees for the prevailing party).

*See* Report to the Court [Doc. # 112], at 2.

(continued…)

Mid-Continent contends that this stipulation did not relieve PSI of the burden of producing evidence segregating damages between fees the Court held were covered under the Policy and fees held not to be covered. Mid-Continent asserts it therefore is entitled to judgment as a matter of law that PSI failed to prove any damages.

This contention is unpersuasive for reasons detailed in the Court's post-trial Memorandum and Order on Entry of Final Judgment [Doc. # 189].[18] In summary, in the Joint PTO, Mid-Continent did not reserve for future factual or legal decision any fee segregation issue. Nor did Mid-Continent state at Docket Call or at a later final pretrial hearing on additional evidentiary trial matters that there remained any question for resolution on a damages issue. Nor did Mid-Continent submit any proposed jury issue or instructions to the jury on damages or any segregation of fees issues. As a result, the Court rejected Mid-Continent's attempt, on January 3, 2017, at an "emergency hearing" the day before jury selection and trial, to contravene the plain meaning of the parties' stipulation in the Joint PTO that they

---

(continued…)
This statement, if inconsistent with the parties' November 30 detailed stipulation in the Joint PTO, was superseded by the agreement in the Joint PTO.

[18] M&O on Final Jmt [Doc. # 189], at 12-14.

had stipulated to the amount of PSI's "damages."[19] The Court again rejects Mid-Continent's argument. Mid-Continent is not permitted to reduce PSI's recovery from the stipulated amount. There was no triable issue regarding the amount of damages or segregation of fees. Mid-Continent's Motion for Judgment as a Matter of Law on the segregation issue is **denied**.

### III. <u>NEW TRIAL</u>

Mid-Continent argues it is entitled to a new trial because: (1) the Court's jury charge erroneously instructed the jury on the legal definitions of "cooperation" and "waiver," and (2) the jury's answers at trial that PSI cooperated with Mid-Continent and that Mid-Continent waived its right to rely on the cooperation clause are against the great weight and preponderance of the evidence.

The duty to cooperate and waiver issues were tried to a jury January 4 through 6, 2017. The jury was asked to answer the following questions, both of which it answered in favor of PSI:

> **Question 1:** Do you find that PSI has proved by a preponderance of the evidence that it complied with the Policy's cooperation clause with respect to the Titeflex offer proposed in 2008?
>
> **Question 2:** Did PSI prove by a preponderance of the evidence that Mid-Continent waived its right to enforce the Policy's cooperation

---

[19] *See* Hearing Transcript, Jan. 3, 2017 [Doc. # 185], at 8-12; *see also* Mid-Continent Motion [Doc. # 193], at 5; Mid-Continent Response to PSI Motion for Entry of Final Judgment [Doc. # 187], at 5.

11

clause?[20]

The Court sets forth the applicable legal standards and then addresses the substantive issues pressed by Mid-Continent.

**A.     Legal Standard for New Trial**

"Federal Rule of Civil Procedure 59 authorizes district courts to, *inter alia*, 'grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . .'" *Sierra v. Dorel Juvenile Grp.*, 663 F. App'x 307, 309 (5th Cir. 2016) (per curiam) (unpublished) (quoting Federal Rule of Civil Procedure 59(a)(1)). "'A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course.'" *Beckham v. La. Dock Co., L.L.C.,* 124 F. App'x. 268, 270 (5th Cir. 2005) (per curiam) (unpublished) (quoting *Smith v. Transworld Drilling Co.,* 773 F.2d 610, 612 (5th Cir. 1985)). "Under this Circuit's precedents, '[a] trial court should not grant a new trial on evidentiary grounds unless the verdict is against the great weight of the evidence.'" *Sierra*, 663 F. App'x at 309 (quoting *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998)).

---

[20]     Verdict Form [Doc. # 169], at 2-3.

12

### B. Analysis of the Jury Charge

The Fifth Circuit has noted the following three requirements that must be met to successfully challenge a jury instruction:

> First, the challenger must demonstrate that the charge as a whole creates "substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." Second, even if the jury instructions were erroneous, we will not reverse if we determine, based upon the entire record, that the challenged instruction could not have affected the outcome of the case. Third, the appellant must show that any proposed instruction it contends should have been given was offered to the district court and correctly stated the law.

*Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 290-91 (5th Cir. 2005) (internal citations omitted).

#### 1. Whether the Court Gave the Correct Instruction on the Definition of "Cooperation"

Mid-Continent argues that it is entitled to a new trial because the Court erroneously charged the jury on the meaning of the cooperation clause in the Policy. Specifically, Mid-Continent contends that the Court's instruction that "PSI complied with the cooperation clause if PSI's conduct was reasonable and justified under all the circumstances that existed[,]" *see* Jury Verdict [Doc. # 169], at 2, improperly defined "cooperate," thereby casting doubt on whether the jury was properly guided in its deliberations. Mid-Continent's objection lacks merit.

Mid-Continent asserts that the Court should have directed the jury to use

"the plain meaning of the wording of the cooperation clause."[21] The only proposed instruction Mid-Continent offered in the Joint PTO regarding the definition of "cooperate" is as follows:

> "Cooperate" means to be helpful by doing what someone asks or tells you to do.[22]

There is no basis in the Policy language for this proposed instruction. Nor does it correctly state the law. *See Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 290-91 (5th Cir. 2005) (noting third requirement to successfully challenge a jury instruction is that a proposed instruction a party contends should have been given "was offered to the district court and correctly stated the law.").

The Court, in its Amended Memorandum and Order [Doc. # 109] and at trial, applied the longstanding test articulated in Texas law for "cooperation" in the insurance policy context, as articulated in *Frazier v. Glens Falls Indem. Co.*, 278 S.W.2d 388, 391-92 (Tex. Civ. App.—Fort Worth 1955, writ ref'd n.r.e.).[23] In *Frazier*, the Texas court described the insured's conduct as "reasonable and justified under the circumstances[.]" *Id.* at 392. This Court also relied on the

---

[21] *See* Motion [Doc. # 193], at 8.

[22] Mid-Continent's Disputed Proposed Definition No. 2, Joint Proposed Jury Instructions, Exh. H to the Joint PTO [Doc. # 126-8], at 22.

[23] *See* Amended M&O [Doc. # 109], at 34; M&O on Waiver and Coop. [Doc. # 141], at 10-12.

14

established principle that "[a]n insured cannot arbitrarily or unreasonably decline to assist in making a fair and legitimate defense or refuse to permit any defense to be made in his or her name." *See* 14 COUCH ON INS. § 199:50 (introductory sentence in section entitled "Generally"); *see also* Comment b, RESTATEMENT OF THE LAW OF LIABILITY INS., Tent. Draft No. 1, § 29 ("The Insured's Duty to Cooperate" in Chapter 2. "Management of Potentially Insured Liability Claims"), dated Mar. 21, 2016 (approved by the ALI membership at the 2016 Annual Meeting "[s]ubject to the Meeting's discussion and the usual editorial prerogative …").[24] The Court's instruction to the jury on the standard for cooperation in a Texas insurance policy is supported by the law and was not prejudicial to Mid-

---

[24] Comment b provides:

> *b. Reasonable assistance.* They duty to cooperate should take into account the position of the particular insured whose conduct is at issue, as well as the needs of the insurer. What is reasonable depends on, among other things, the knowledge and experience of the insured, the extent of the risks presented by the legal action, the complexity of the action, the ability of the insurer to obtain the information or other object of cooperation from sources other than the insured, the good-faith effort of the insured, and the extent to which cooperation is needed to reduce the insurer's exposure.

Restatement of the Law of Liability Ins., Tent. Draft No. 1, § 29. Additionally, the Reporter's Note b. states that "[c]ourts have consistently subjected the duty to cooperate to a reasonableness test." *Id.*

At the 2017 ALI Annual Meeting on May 23, 2017, ALI announced that rather than hold a final vote on the proposed draft of the Restatement of Law of Liability Insurance as scheduled, the draft's Reporters agreed that another year of work was needed on the project generally. The proposed final draft is expected to be presented at the 2018 ALI Annual Meeting.

15

Continent.

### 2. Waiver by Mid-Continent of Reliance on Cooperation Clause

Mid-Continent also argues that the Court improperly instructed the jury on the second special issue, that is, whether Mid-Continent waived its right to enforce the cooperation clause against PSI. Mid-Continent argues that the Court incorrectly included in the jury instructions the phrase that "silence or inaction, for so long a period as to show an intention to yield the known right, is also enough to prove waiver." *See* Verdict Form [Doc. # 169], at 3. Mid-Continent asserts there was no evidence Mid-Continent stood silent with respect to PSI's duty to cooperate. Motion [Doc. # 193], at 10.

The Court concludes that there was sufficient evidence in the record to support the instructions as delivered. First, the language in the pretrial and pre-appeal reservation of rights letters in regard to the cooperation clause referred specifically to "investigation and defense" of the claim or suit, but not to "settlement."[25] Despite receiving inquiries on coverage issues from PSI's private

---

[25] *See* PSI's Response [Doc. # 195], at 3-7, 14; PSI Trial Exh. 17, at 0023 [Doc. # 174-17]; PSI Trial Exh. 32, at 0033 [Doc. # 174-28]; PSI Trial Exh. 40, at 0040 [Doc. # 174-36]. The duty to cooperate was mentioned only in passing in all but one reservation of rights letter sent by Mid-Continent, and was mentioned deep into a long paragraph near the bottom of the sixth of seven pages in the letters. Mid-Continent simply stated it might rely on the cooperation clause, among other options.

16

counsel, Mid-Continent did not cite Titeflex matters as a cooperation clause coverage concern in any communications to PSI or its private counsel until 2014, approximately six years after the events in issue, the Titeflex settlement offer and the State Court verdict, and after most of the complex appeals had been completed.[26] PSI also presented testimony at trial of Mid-Continent representative Rod Evans in support of PSI's position that it would have been appropriate for Mid-Continent to inform PSI of PSI's alleged violation of the cooperation clause in letters delivered after the supposed violation.

Indeed, Mid-Continent's arguments concerning whether its inaction or silence invoked a waiver go to the weight of the evidence, a province for the jury. A review of the trial record establishes that there was evidence sufficient to support the "silence" instruction. The instruction was warranted.

Finally, even if the single sentence in the instructions was error, the instructions as a whole were correct and deference to the jury's verdict is warranted. The trial was not unfair and no prejudicial error was committed in its course. *See Smith,* 773 F.2d at 612; *Beckham,* 124 F. App'x at 270.

---

[26] Mid-Continent did refer to PSI's conduct regarding the Titeflex settlement offer as a concern in connection with the requirement that coverage extends only to damages because of "property damage" caused by an "occurrence" as defined in the Policy. *See* PSI Trial Exh. 46 [Doc. # 174-41], Letter from Rod Evans to PSI Attn: Mark Barron, dated Sept. 19, 2008.

17

### C. Weight of the Evidence

Mid-Continent also argues it is entitled to a new trial because, it contends, the jury's findings that Mid-Continent waived its right to rely upon the cooperation clause and that PSI cooperated with Mid-Continent are against the great weight and preponderance of the evidence. For reasons explained above, and based on the trial record, the Court finds that the ample testimony and exhibits presented to the jury were sufficient to support the jury's verdict on both questions and the jury's findings were not against the great weight of evidence. *See Whitehead*, 163 F.3d at 269; *Sierra,* 663 F. App'x at 309.

### IV. CONCLUSION AND ORDER

For the foregoing reasons, Plaintiff Mid-Continent Casualty Company's "Renewed Motion for Judgment as a Matter of Law and Motion for New Trial" [Doc. # 193] is **DENIED in all respects**.

SIGNED at Houston, Texas, this 12th day of **July, 2017**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE